**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| KENNETH MCPHERSON AND | ) | |
| ERIC SIMMONS | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 20-CV-795-SAG |
| | ) | |
| BALTIMORE POLICE DEPARTMENT, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>Individual Defendants' Memorandum of Law
In Support of Their Motion to Dismiss Plaintiffs' Complaint</u>**

## TABLE OF CONTENTS

Introduction ...................................................................................................................................1

Statement of Facts .........................................................................................................................2

    I.     Murder of Anthony Wooden ...............................................................................2

    II.    Investigation by Baltimore Police Department Identifies Plaintiffs as Suspects ........3

    III.   Plaintiffs' Arrest, Trial, Conviction, and Release ...................................................3

Legal Standard...............................................................................................................................4

Argument .......................................................................................................................................5

    I.     Plaintiffs Do Not Provide a Plausible Basis for a *Brady* Violation Under Any Cognizable Theory ...............................................................................................5

         A.    Plaintiffs Do Not Allege Any New Evidence Regarding Diane Bailey or Marcus King ...............................................................................................5

         B.    Plaintiffs Were Put on Notice Regarding Sandra Jackson and Have Provided No Factual Support for Their Assumptions Regarding Her Niece.................6

         C.    Plaintiffs Received Appropriate Discovery for Daniel Ellison, Crystal White and James Martin.....................................................................................8

         D.    Plaintiffs' Remaining *Brady* Claim Lack Any Factual Enhancements ..........9

         E.    Allegations Regarding an Alleged Failure to Conduct Additional Investigation Fail to State A Claim Under the Fourteenth Amendment ........9

    II.    Plaintiffs' Claim for Fabrication of Evidence Lacks Specifics Demonstrating Plausibility...........................................................................................................10

         A.    Marcus King's Recantations of His Recorded Statement Do Not Provide Any Evidence How the Officers Would Have Been Aware that the Statement Was False....................................................................................................11

         B.    Plaintiffs Provide No Factual Support for Their Conclusions That Diane Bailey Did Not Witness the Murder and that Individual Defendants Did Anything Other than Rely on the Information that She Provided .................12

    III.   Plaintiffs' Malicious Prosecution Claims, Whether Rooted in State or Federal Law Are Barred by the Absence of Malice and the Existence of Probable Cause............14

         A.    Probable Cause for Prosecution of Plaintiffs.................................................14

B.      Plaintiffs' Contention that Individual Defendants Ignored Evidence Known to Undermine the Probable Cause Is Entirely Based on Assumptions ..........15

C.      Absence of Any Evidence of Malice Is Fatal to the State Claim .................15

IV.      Failure to Intervene ...................................................................................15

V.      Any Claim for Unlawful Detention Is Precluded by Probable Cause and, In Any Event, Is Time Barred ...............................................................................16

A.      Probable Cause Precludes Any Unlawful Detention Claim .........................16

B.      Alternatively, the Unlawful Pretrial Detention Claim Is Time Barred ..........17

VI.      This Court Should Dismiss Plaintiffs' Conspiracy Claims Due to Improper Pleading and the Fact that They Are Barred by the Intracorporate Conspiracy Doctrine ........17

A.      Plaintiffs Fail to Plead Facts Sufficient to Establish the Elements of Conspiracy Under Section 1983 ........................................................................

B.      The Same Deficiencies Exist in the State Claim ...........................................18

C.      Any Claims for Conspiracy Are Barred by the Intracorporate Conspiracy Doctrine ...................................................................................................19

VII.      Plaintiffs Have Not Satisfied the Elements of Intentional Infliction of Emotional Distress ....................................................................................................19

VIII.      Plaintiffs' Claim Under Article 24 of the Maryland Declaration of Rights Contains No Supporting Facts and Is Duplicative of Count I .................................................20

IX.      Alternatively, Plaintiffs' State Law Claims Should Be Dismissed After Dismissal of the Federal Claims ........................................................................................21

X.      Plaintiffs' Vague and Conclusory Allegations Against Individual Defendants as a Group Are Insufficient to Support Any Claim Against Neverdon, Garvey, and Gilbert ......................................................................................................21

XI.      Individual Defendants Are Entitled to Qualified Immunity for Their Actions ........22

Conclusion .................................................................................................24

## **TABLE OF AUTHORITIES**

**Cases**

- *Ashcroft v. Al-Kidd*, 563 U.S. 731 (2011)…………………………………………...…..22

- *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)…………………………………………..…5, 8, 15

- *Barnes v. Thompson*, 58 F.3d 971 (4th Cir. 1995)…………………………………………10

- *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)…………………….…5, 9, 10, 15, 16, 21

- *Brady v. Maryland*, 373 U.S. 83 (1963)………………………………………………..passim

- *Brown v. City of Chicago*, 2019 WL 4958214 (N.D.Ill. Oct. 8, 2019)………...…….…….17

- *Burley v. Baltimore Police Dep't*, 422 F. Supp. 3d 986 (D. Md. 2019)…………...…….7, 15

- *Buschi v. Kirven*, 775 F.2d 1240 (4th Cir. 1985)……………………..…………………….18

- *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984)……………...…..18

- *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001)………………..…………………….11, 12

- *Durham v. Horner*, 690 F.3d 183 (4th Cir. 2012)……………………………….…..…14

- *Estate of Bryant v. Baltimore Police Department*, 2020 WL 673751 (D. Md. Feb. 10, 2020)………………………………………………………………………….19

- *Evans v. Chalmers*, 703 F.3d 636 (4th Cir. 2012)…………………………………………14

- *Francis v. Giacomelli,* 588 F.3d 186 (4th Cir. 2009)………………………………5, 9, 13

- *Fullwood v. Lee***,** 290 F.3d 663 (4th Cir. 2002)……………………………………...…….6

- *Garcia v. Gang Task Force*, RBD-16-674, 2017 WL 1944100 (D. Md. May 9, 2017)…….5

- *Gerstein v. Pugh*, 420 U.S. 103 (1975)…………………………………………..…..14

- *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)……………………………………………...22

- *Harris v. Jones*, 281 Md. 560, 380 A.2d 611, 614 (1977)…………………………………19

- *Hawkins v. Leggett*, 955 F. Supp. 2d 474, 496, 2013 WL 3218964 (D. Md. 2013)………..20

- *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996)…………………...17

- *Hoke v. Netherland*, 92 F.3d 1350 (4th Cir. 1996)…………………………………………8, 10

- *Hunter v. Bryant*, 502 U.S. 224 (1991)…………………………………………...…22

- *Ibarra v. United States*, 120 F. 3d 472 (4th Cir. 1997)…………………………………...…5

- *Illinois v. Gates*, 462 U.S. 213 (1983)…………………………………………………...14

- *In re Canarte*, 558 Fed. Appx. 327, 2014 WL 842111 (4th Cir. 2014)…………………...20

- *Johnson v. Baltimore Police Dep't*, 2020 WL 1169739 (D. Md. Mar. 10, 2020)………….19

- *Kashaka v. Baltimore Cty., Maryland,* 450 F. Supp. 2d 610 (D. Md. 2006)………..……...19

- *Kloth v. Microsoft Corp.*, 444 F.3d 312 (4th Cir. 2006)………………………………………..5

- *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 916 A.2d 257 (2007)…………………………18

- *Manuel v. City of Joliet*, 137 S. Ct. 911, 917 (2017)……………………………………...17, 18

- *Meyers v. Baltimore Cty., Md.*, 713 F.3d 723 (4th Cir. 2013)……………………………...22

- *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)………………………………………...…14

- *Montgomery Ward v. Wilson*, 339 Md. 701, 664 A.2d 916 (1995)……………….…..………15

- *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911 (5th Cir. 1952)……………...18

- *Okwa v. Harper*, 360 Md. 161, 757 A.2d 118 (2000)…………………………………....15

- *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014).......6, 9, 17

- *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342 (2013)………………………………...19

- *Pearson v. Callahan*, 555 U.S. 223 (2009)……………………………………………....21

- *Petty v. City of Chicago*, 754 F.3d 416 (7th Cir. 2014)……………….…..……………....11

- *Proctor v. Metropolitan Money Store, Corp.*, 579 F.Supp.2d 724 (D. Md. 2008)…………21

- *Randall v. Prince George's Cty.*, 302 F.3d 188 (4th Cir. 2002)…………………………....15

- *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870 (4th Cir. 1989)…………………………..5

- *Serrano v. Guevara*, 2020 WL 3000284 (N.D.Ill. June 4, 2020)……………………………7

- *Shooting Point, L.L.C. v. Cumming*, 243 F. Supp. 2d 536 (E.D. Va. 2003)………………..17

- *Smith v. Munday*, 848 F.3d 248 (4th Cir. 2017)……………………………………........16

- *Trulock v. Freeh,* 375 F.3d 391 (4th Cir. 2001)……………………………………………...21

- *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966)…………………………20

- *United States v. Bartko*, 728 F.3d 327 (4th Cir. 2013)……………………………………8

- *United States v. Caro*, 597 F.3d 608 (4th Cir. 2010)………………………………………..7

- *United States v. Ducore*, 309 F. Supp. 3d 436 (E.D. Va. 2018)…………………………..7, 8

- *United States v. Ellis*, 121 F.3d 908 (4th Cir.1997)………………………………………8

- *United States v. Gray*, 137 F.3d 765 (4th Cir. 1998)………………..…………………14, 16

- *United States v. Herbst*, 641 F.2d 1161 (5th Cir. 1981)…..………………………………...10

- *United States v. Hilliard*, 851 F.3d 768 (7th Cir. 2017)………………………………….7

- *United States v. Morrero*, 904 F.2d 251 (5th Cir. 1990)………..……………………….10

- *United States v. Wilson*, 901 F.2d 378 (4th Cir. 1990)……………………………………8

- *Van Royen v. Lacey*, 262 Md. 94, 277 A.2d 13 (1971)……………….....…………….....18

- *Washington v. Wilmore*, 407 F.3d 274 (4th Cir. 2005)………….………………….....11

**Statutes**
- 42 U.S.C. §1983……………………………………………………………………passim

- 28 U.S.C. §1367(c)(3)…………………………………………………………........11

**Rules**
- Fed. R. Civ. P. 12(b)(6)…………………………………………………….....1, 4, 5
- Fed. R. Civ. P. 8(a)…………………………………………………………..…….1

## INTRODUCTION

On May 18, 1985, Kenneth McPherson and Eric Simmons (hereinafter "Plaintiffs"), were convicted after a week-long trial in Baltimore City of conspiracy to commit murder for their part in the murder of Anthony Wooden. *See* Complaint ("Compl."), ¶¶ 73, 75. Evidence presented at trial included an inculpatory statement from Diane Bailey, which characterized Plaintiffs as being involved in the shooting. *Id*. at ¶¶ 37, 73-75. The trial also included the introduction of an inculpatory statement from Marcus King, even though King had recanted the statement and testified that Plaintiffs had nothing to do with the shooting. *Id*. at ¶ 75.

For reasons not described in the Complaint, the Circuit Court for Baltimore City granted a Joint Petition for Writ of Actual Innocence filed by Plaintiffs and the Conviction Integrity Unit of the Baltimore City State's Attorney's Office (hereinafter the "SAO") which vacated the convictions on May 3, 2019. *Id*. at ¶ 84. The Complaint asserts that the criminal charges against Plaintiffs were dismissed when the State represented "that multiple credible pieces of evidence, exculpating evidence, support that neither Mr. McPherson nor Mr. Simmons conspired to commit nor committed this murder." *Id*. at ¶ 85. None of the facts allegedly uncovered by the SAO since the conviction are itemized in the Complaint. On March 26, 2020, Plaintiffs filed this lawsuit alleging wrongdoing against the Baltimore Police Department and five named officer defendants.[1]

As described more fully below, Individual Defendants should be dismissed from this action for several reasons. First, when the conclusory hyperbole is stripped away from the Complaint, it is apparent that Plaintiffs are merely offering a new characterization of the evidence that was presented to the criminal jury rather than identifying any genuine evidence that was fabricated or

---

[1] Plaintiffs also list "Unknown Employees of the Baltimore Police Department" as Defendants.

suppressed. In other words, Plaintiffs are unable to plausibly point to any evidence that was withheld from them or their trial counsel that would satisfy a *Brady* claim and fail to provide any factual enhancement for their assertion of fabrication of evidence. Second, Plaintiffs failed to adequately plead causes of action for malicious prosecution, detention without probable cause, failure to intervene, or conspiracy, and the latter claim is further barred by the intracorporate conspiracy doctrine. Additionally, Plaintiffs fail to specify any improper conduct personally attributable to Defendants Neverdon, Garvey, and Gilbert. Finally, the Individual Defendants are entitled to qualified immunity for their good faith investigation into the murder at issue.

## **STATEMENT OF FACTS**

### I.   **Murder of Anthony Wooden.**

At or around 12:30 a.m. on August 13, 1994, Anthony Wooden was walking north on Washington Street when he was approached by numerous men attempting to rob him.[2] Compl. at ¶ 15. Mr. Wooden and the individuals pursuing him then exchanged gunfire which resulted in Mr. Wooden suffering a fatal gunshot wound to the head. *Id.* Mr. Wooden was killed in the 1600 block of Washington Street near the intersection of Federal Street. *Id.*

### II.   **Investigation by Baltimore Police Department Detectives Identify Plaintiffs as Suspects**

At around 12:30 a.m., several officers from the Baltimore City Police Department responded to the crime scene including Detective Robert Patton who acted as lead investigator. *Id.* at ¶¶ 17, 18. As part of the investigation, Detective Patton and his partner, Detective Frank Barlow, identified several witnesses who were in the area at the time of the shooting including Sandra Jackson, Crystal White, and James Martin. *Id.* at ¶¶ 18, 20, 24, 26. In addition to those witnesses, Diane Bailey, who lived at 1421 North Washington Street, contacted the Baltimore City Police

---

[2] Individual Defendants take the allegations in the Complaint as true for purposes of their Motion to Dismiss only. They do not admit the allegations for any other purpose.

Department to advise that she also witnessed the shooting. *Id*. at ¶ 27. Ms. Bailey was subsequently interviewed along with her daughter and both positively identified the Plaintiffs as participating in the murder. *Id*. at ¶¶ 27, 37.

Ms. Bailey and her daughter also both identified Marcus King, a juvenile at the time, as being a participant in the murder. *Id*. at ¶ 37. Marcus King was subsequently arrested and later interviewed by detectives when he gave a statement corroborating Ms. Bailey's version of events. *Id*. at ¶ 55. Marcus King recanted numerous times afterwards including when he testified at trial. *Id*. at ¶¶ 58, 59, 74.

## III.   Plaintiffs' Arrest, Trial, Conviction, and Release.

Plaintiffs were arrested on September 6, 1984. *Id.* at ¶ 65. On that date, Plaintiffs were interviewed and denied any involvement in the murder. *Id.* at ¶ 66. Additionally, Daniel Ellison, a co-defendant who was also arrested on that date, gave a statement implicating himself and not Plaintiffs in the murder. *Id*. at ¶ 68.

At trial, Diane Bailey and Marcus King were called as witnesses by the state. *Id*. at ¶ 73. Marcus King's prior recorded statement was introduced as evidence after he testified differently on the witness stand. *Id*. at ¶ 74. Plaintiffs also called several witnesses of their own who offered alibi testimony in support of Plaintiffs' version of events. *Id*. at  ¶ 67. After a week-long trial, Plaintiffs were convicted of conspiracy to commit murder on May 18, 1995. *Id*. at ¶¶ 83, 85. Plaintiffs received sentences of life imprisonment. *Id*. at ¶ 86.

Plaintiffs sought post-conviction relief though a Petition for Writ of Actual Innocence, which the Circuit Court for Baltimore City granted on May 3, 2019. *Id.* at ¶ 84. The State elected not to retry Plaintiffs. *Id.* at ¶ 85.

Plaintiffs filed this Complaint on March 26, 2020 against the Baltimore Police Department

and Individual Defendants. *See* ECF 1. In the Complaint, Plaintiffs allege: (1) a claim under the 14th Amendment for failing to disclose exculpatory evidence against the Individual Defendants; (2) a claim under the 14th Amendment for fabricating evidence against the Individual Defendants, (3) a claim under the 4th and 14th Amendments for malicious prosecution against the Individual Defendants; (4) a claim under the 4th Amendment for detention without probable cause against Individual Defendants; (5) a claim under 42 U.S.C. §1983 for failure to intervene against Individual Defendants; (6) a claim under 42 U.S.C. §1983 for conspiracy to deprive constitutional rights against Individual Defendants; (7) a *Monell* claim under 42 U.S.C. §1983 against the Baltimore Police Department; (8) a state law claim for malicious prosecution against Individual Defendants; (9) a state law claim for civil conspiracy against Individual Defendants; (10) a state law claim under Article 24 of the Maryland Declaration of Rights for violation of due process against Individual Defendants; and (11) a state law claim for indemnification against the Baltimore Police Department.

## **LEGAL STANDARD**

In order to survive a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). If a complaint only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it fails to satisfy the pleading requirements and dismissal is appropriate. *Id.* (quoting *Twombly*, 550 U.S. at 555). A complaint must also allege facts that allow "the Court to infer more than the mere possibility of misconduct" and requires "factual enhancements" of "naked assertions" of wrongdoing. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (applying the *Twombly* and *Iqbal* pleading standard to individual

officers named in a complaint)).

When evaluating a motion to dismiss under 12(b)(6), a court must accept as true all the well-pleaded material facts and must draw all reasonable inferences from those facts in the light most favorable to the pleader. *Ibarra v. United States*, 120 F. 3d 472, 474 (4th Cir. 1997). However, unsupported legal conclusions and conclusory factual allegations that do not reference specific events do not suffice. *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Thus, a court need not accept as true unwarranted inferences, unreasonable conclusions, or arguments. *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006). Pleading requirements are intended to ensure a defendant receives fair notice of the factual basis for claims contained within a complaint. *Garcia v. Gang Task Force*, RBD-16-674, 2017 WL 1944100, at *3 (D. Md. May 9, 2017) (citing *Twombly*, 550 U.S. at 545)).

## **ARGUMENT**

Plaintiffs bring several federal and state law claims against Individual Defendants. However, for the reasons set forth below, this Court should dismiss each of these claims against these defendants.

## I.     **Plaintiffs Do Not Provide a Plausible Basis for a *Brady* Violation Under Any Cognizable Theory**

The facts alleged in the Complaint do not support Plaintiffs' claim of a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). To succeed on a *Brady* based claim, Plaintiffs must prove: (1) the evidence at issue was favorable to them; (2) Individual Defendants suppressed that evidence in bad faith; and (3) Plaintiffs suffered prejudice as a result of that suppression. *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 396-97 (4th Cir. 2014). For the various reasons described below, Plaintiffs cannot plausibly succeed on this claim.

## A.     **Plaintiffs Do Not Allege Any New Evidence Regarding Diane Bailey and**

**Marcus King that was Not Already Disclosed and Explored at the Trial**

The Complaint fails to allege any new evidence regarding Diane Bailey or Marcus King. On the contrary, Plaintiffs' allegations regarding those witnesses were brought to light at the original trial. Plaintiffs concede that Marcus King's disavowal of his recorded statement happened at trial. Compl. at ¶ 74. Additionally, Plaintiff McPherson has already raised allegations regarding the disclosure of Marcus King's statements, and a court determined that no due process violation had occurred. *See* Mem. Op. Baltimore City Cir. Ct. at 18, attached hereto as Ex. 1. Regarding Diane Bailey's motivations to lie, Plaintiffs' trial defense counsel questioned her regarding the benefits that she had received to testify at trial. *See id.* at 12-13. Additionally, a memorandum was produced at trial discussing the expenses she was paid, and information regarding those benefits was presented to the jury in closing argument. *Id.* As this evidence was disclosed and Plaintiffs were aware of it, *Brady* is not implicated. *See Fullwood v. Lee*, 290 F.3d 663, 686 (4th Cir. 2002) (stating that information that is not only available to the defendant but is actually known by the defendant would fall outside of the *Brady* rule).[3]

**B.      Plaintiffs Were Put on Notice Regarding Sandra Jackson and Have Provided No Factual Support for Their Assumptions Regarding Her Niece.**

The Complaint describes Sandra Jackson as a witness who never viewed a photo lineup, but allegedly provided a "detailed description of the men involved." Compl. at ¶¶ 60, 61. While the Complaint artfully contends that these unspecified descriptions of the men involved were not disclosed, implicit within this allegation is the fact that Jackson's identity as a witness was in fact disclosed. *See id.* at ¶ 63.

Even though it is not disputed that Sandra Jackson was disclosed as a witness, Plaintiffs

---

[3] As Marcus King and Diane Bailey died on March 26, 2000 and July 8, 2011 respectively, discovery should not reveal any further new evidence regarding these witnesses. *See* Death Records, attached hereto as Ex. 2.

invite the Court to speculate that, (a) the descriptions Jackson would have provided were exculpatory and, presumably, (b) that they were intentionally withheld by Individual Defendants. There is no factual basis pled within the Complaint to support either of these essential elements of a *Brady* claim. With respect to Plaintiffs' speculation that the descriptions would have been exculpatory, such speculation is not sufficient to support a *Brady* claim. *See United States v. Ducore*, 309 F. Supp. 3d 436, 440 (E.D. Va. 2018) (citing *United States v. Caro*, 597 F.3d 608, 615 (4th Cir. 2010) (stating that speculating that other people might produce statements that are exculpatory does not satisfy *Brady*)); *see also United States v. Hilliard*, 851 F.3d 768, 782 (7th Cir. 2017); *Serrano v. Guevara*, 2020 WL 3000284), at *19 (N.D.Ill. June 4, 2020) (granting summary judgment in favor of defendants on *Brady* claim based on speculative argument that interview notes would have existed and would likely have contained exculpatory information*)*.

Alternatively, even if a speculative *Brady* claim were permitted, Plaintiffs would nonetheless have been required to uncover Jackson's account through the exercise of reasonable diligence since they tacitly concede that her identity as a witness was disclosed. *Burley v. Baltimore Police Dep't*, 422 F. Supp. 3d 986, 1027 (D. Md. 2019) (quoting *United States v. Wilson*, 901 F.2d 378, 380-81 (4th Cir. 1990) (finding that there is no *Brady* violation when the alleged exculpatory material is available to the accused from "a source where a reasonable defendant would have looked")). Here, Plaintiffs' defense counsel at a minimum should have exercised reasonable diligence and interviewed Sandra Jackson. *See Hoke v. Netherland*, 92 F.3d 1350, 1355 (4th Cir. 1996). The failure to do so does not create a *Brady* violation after the fact.

Even if the source of the evidence had not been disclosed to Plaintiffs, they provide no factual support for their conclusion that Sandra Jackson's reference to her niece qualifies as exculpatory evidence. While Plaintiffs may be dissatisfied that no one ever contacted Ms.

7

Jackson's niece, they do not get to speculate in a pleading what she might have stated simply because Ms. Jackson believed that one of the suspects had robbed her niece a week before the incident. *See Ducore,* 309 F. Supp. 3d at 440. Such speculation is not entitled to an assumption of truth without any factual enhancement. *Ashcroft,* 556 U.S. at 679.

### C.   Plaintiffs Received Appropriate Discovery for Daniel Ellison, Crystal White and James Martin

Plaintiffs concede that Daniel Ellison's statement was provided in discovery. *See* Compl. at ¶ 85. Additionally, a court sitting in review of Plaintiffs' trial counsel's performance has already determined that "trial counsel was aware of Ellison's statement well before the hearing." Mem. Op. Baltimore City Cir. Ct. at 12. As such, the notes on that interview would have substantively already been included in the interview that was disclosed. *See United States v. Bartko*, 728 F.3d 327, 339 (4th Cir. 2013) (quoting *United States v. Ellis*, 121 F.3d 908, 916 (4th Cir.1997) ("courts of necessity examine undisclosed evidence item-by-item, their materiality determinations must evaluate the cumulative effect of all suppressed evidence to determine whether a *Brady* violation has occurred.")). As such, this cumulative evidence is not *Brady* material.

To the extent that Plaintiffs are making any *Brady* arguments regarding Crystal White, the Complaint is devoid of any language that suggests that her existence as a potential witness and her description of the incident were not disclosed. *See generally* Compl. ¶¶ 24-25, 60. As such, the allegation fails the suppression prong of the *Brady* requirements. *Owens*, 767 F.3d at 396-97.

To the extent that Plaintiffs are seeking to rely on James Martin to sustain a *Brady* claim, nothing alleged in the Complaint suggests that his identity or account were even withheld, much less that he had information that would have triggered diminished judicial confidence in the conviction. The Complaint states that Martin "was sitting on his steps when the shots were fired and reported that the shooting occurred by the intersection of Federal and Washington." Compl. at

¶ 26. This basic fact regarding the location of the crime scene is not alleged to be in dispute and was known to Plaintiffs because the victim's body was located "on the 1600 block of North Washington at around 12:30 a.m." *See id*. at ¶¶ 15, 16. At bottom, the Complaint fails to even allege that Martin's account and identity were withheld.  *See id*. at ¶¶ 15, 26. Plaintiffs have thus failed to allege that any material evidence was intentionally withheld.

> ### D.    Plaintiffs' Remaining *Brady* Claims Lack Any Factual Enhancements

Perhaps concerned that the allegations discussed above do not amount to a claim, the Complaint attempts to inject a catchall style allegation, claiming that "additional eyewitnesses" were withheld, "a message" from the victim's family member tended to exculpate Plaintiffs, and that notes from co-defendant Daniel Ellison's interview contained "additional exculpatory information not memorialized in Ellison's taped statement." Compl. at ¶ 83. These barebone allegations are insufficient to meet the *Twombly* plausibility threshold and, in any event, do not withstand basic scrutiny.

The allegation that Individual Defendants withheld additional eyewitnesses is devoid of factual enhancement and therefore not entitled to the assumption of truth. *See Francis*, 588 F.3d at 193 (citing *Twombly*, 550 U.S. at 557). Similarly, the one sentence devoted to the allegation that Individual Defendants suppressed "a message" from a member of the victim's family identifying the shooter as someone other than Plaintiffs is unsupported by any facts and not referenced anywhere else in the Complaint. *See* Compl. at ¶ 83. This allegation is also so vague and conclusory that it does not satisfy Fed. R. Civ. P. 8(a)'s basic notice requirement. As Plaintiffs were found guilty of conspiracy to commit murder and thus not ever convicted of being the actual shooter, this unverified message would not have exculpated Plaintiffs, in any event.

> ### E.    Allegations Regarding an Alleged Failure to Conduct Additional
> ### Investigation Fail to State a Claim Under the Fourteenth Amendment

Plaintiffs raise perceived investigative failures of Individual Defendants to properly follow up on statements given by Sandra Jackson, Crystal White, and James Martin. Compl. at ¶¶ 33, 62. As stated *supra*, though *Brady v. Maryland* requires the disclosure of exculpatory evidence, it does not require the government to disclose information reasonably available to the defendant. *Hoke*, 92 F.3d at 1355; *Barnes v. Thompson*, 58 F.3d 971 (4th Cir. 1995). Furthermore, several Federal Circuits have held that *Brady* does not place an affirmative duty upon Government to assist [the] defense in presentation of its case. *See U.S. v. Herbst*, 641 F.2d 1161 (5th Cir. 1981); *U.S. v. White*, 970 F.2d 238, 337 (7th Cir. 1992) (quoting *U.S. v. Morrero*, 904 F.2d 251, 261 (5th Cir. 1990) ("[w]hile the Supreme Court in *Brady* held that the government may not properly conceal exculpatory evidence from a defendant, it does not place any burden upon the government to conduct a defendant's investigation or assist in the presentation of the defense's case.")).

As already stated, the Complaint concedes that Sandra Jackson was disclosed as a witness, Crystal White's identity and her description of the shooting were disclosed, and James Martin's description of the location of the shooting was disclosed. A perceived failure to interview those witnesses again does not come close to rising to a level of a *Brady* violation. As much as Plaintiffs would have preferred Individual Defendants to gather evidence in a different manner, this evidence was available to them and thus not suppressed for the purposes of a *Brady* violation. Plaintiffs' desire for a different investigation does not amount to a claim upon which relief can be based, and therefore any claims based on an insufficient investigation should be dismissed.

## II. Plaintiffs' Claim for Fabrication of Evidence Lacks Specifics Demonstrating Plausibility

Plaintiffs fail to plead facts demonstrating the plausibility of success on their fabrication claims. In order to establish a due process violation based on fabrication of evidence, Plaintiffs

must show that the Defendants fabricated evidence and that the fabrication caused a deprivation of liberty. *Washington v. Wilmore*, 407 F.3d 274, 282 (4th Cir. 2005). Unsupported allegations and speculation of fabricated evidence do not suffice. *White v. Wright*, 150 F. App'x 193, 199 (4th Cir. 2005) (citing *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)). Finally, no claim for fabrication will be available unless the Individual Defendants knew that the evidence was false. *See Petty v. City of Chicago*, 754 F.3d 416, 422-423 (7th Cir. 2014) (no fabrication claim available based on coerced witness testimony and distinguishing fabricated evidence, which is knowingly false, from unactionable situations where law enforcement utilized coercive circumstances to get "a reluctant witness to say what may be true"). For reasons stated below, Plaintiffs' fabrication claims fail to meet this standard.

A.   **Marcus King's Recantations of His Recorded Statement Do Not Provide Any Evidence of How the Officers Would Have Been Aware that the Statement Was False**

Marcus King provided a statement to Trooper Ressin and Defendants Patton and Barlow "that corroborated Ms. Bailey's statement." Compl. at ¶55. In other words, King implicated Plaintiffs in the shooting at issue. By the time King testified at trial, however, he recanted and no longer supported the prosecution theory. *Id.* at ¶¶ 58, 74. Plaintiffs point to various coercive circumstances with respect to King's interrogation—13 hours of interrogation, his relative youthfulness, and aggressive questioning—and argue that this supports a claim for evidence fabrication. Compl. at ¶¶ 54, 55, 58, 59, 74. However, no fabrication claim is possible based upon King's statement because the Complaint does not state any plausible basis from which the Individual Defendants would know that the recorded statement was false. *See Devereaux v. Abbey*, 263 F.3d 1070, 1077 (9th Cir. 2001) (stating that when a child is interviewed there needs to be a showing that the interviewer knew or should have known that the alleged perpetrator was innocent

or that the interview techniques used were so abusive that the interviewer knew or should have known that they would yield false information). No such facts contained within the Complaint come close to meeting this standard.

Plaintiffs attempt to fit their characterization of King's interrogation into the rubric of a fabrication claim by alleging, "[t]he BPD Officer Defendants and Trooper Ressin knew that Marcus' statement was false because, among other reasons, multiple people confirmed Plaintiffs' alibis, Plaintiffs did not match the detailed physical descriptions of the suspects given by an actual eyewitness, and there was no physical evidence or other legitimate evidence implicating Plaintiffs in the shooting." Compl. at ¶ 57. Even if these factual assertions are taken as true, however, they do not add up to the necessary prerequisite for a fabrication claim; that is, that Individual Defendants knew that King's inculpatory account was false. First, the Complaint acknowledges that King's inculpatory account "corroborated" the account provided by Bailey. Compl. ¶ 55. Thus, the fact that Plaintiffs asserted an alibi defense and that King's account was inconsistent with an unspecified "actual eyewitness" is not a basis from which Individual Defendants could objectively divine which version of these competing narratives was true or false. Second, the alleged absence of physical evidence implicating Plaintiffs in the shooting also could not provide an objective basis from which Individual Defendants could be expected to determine whether King's statement was false. Third, the fact that the criminal jury was presented with the competing statements of King yet chose to convict demonstrates that Individual Defendants had no objective basis to outright reject King's statement which inculpated Plaintiffs.  *Id*. at ¶¶ 74-75.

As such, the allegation that Individual Defendants fabricated a false statement from Marcus King fails does not amount to an actionable claim.

### B.   Plaintiffs Provide No Factual Support for Their Conclusion that Diane Bailey Did Not Witness the Murder and that Individual Defendants Did

**Anything Other than Rely on the Information that She Provided**

Plaintiffs agree that the genesis of Diane Bailey's involvement in the case came from her approaching Individual Defendants. Compl. at ¶ 27. As a result of the information exchanged in that meeting, Diane Bailey and her daughter, Keisha Thompson, were asked to do a photographic array and a live lineup where they positively identified Plaintiffs. *Id*. at ¶¶ 27, 37. Though Plaintiffs concede that Individual Defendants did not seek out Diane Bailey or conduct identification procedures that were unduly suggestive as a matter of law, they conclude without any factual support that Individual Defendants knew Diane Bailey and her daughter "had not seen the shooting and had no basis to make a truthful, accurate or reliable eyewitness identification of anyone involved." *Id*. at ¶ 37.

To reach Plaintiffs' unsupported conclusion that Individual Defendants knew that Diane Bailey could not make a reliable eyewitness identification in this case, one needs to look past the fact that she correctly identified at least Daniel Ellison, who Plaintiffs concede actually admitted to his participation in the murder. *Id*. at ¶ 68. As already stated above, the Complaint also acknowledges that King's inculpatory account "corroborated" the account provided by Bailey. *Id*. at ¶ 55. The fact that a criminal jury chose to convict the remaining people, including Plaintiffs, who were identified by Diane Bailey, further demonstrates that Individual Defendants had no objective basis to outright reject Diane Bailey's statements and identifications which inculpated Plaintiffs. *Id*. at ¶¶ 74-75.

As stated above, Plaintiffs attempt to once again use their unsuccessful trial tactic of using Diane Bailey's financial assistance as a means to discredit her. However, even if that allegation is accepted as true, there still needs to be some evidence that Individual Defendants had any knowledge that her statement was false. *See Petty*, 754 F.3d at 422-23. Without any factual

13

enhancements for that nexus, the conclusion that Individual Defendants played any role in fabricating Diane Bailey's statements is not entitled to a presumption of truth and fails to meet the pleading standards of *Twombly* and *Iqbal*. *Francis*, 588 F.3d at 193. As such, this claim fails to state a claim for which relief can be based and should be dismissed.

## III.   Plaintiffs' Malicious Prosecution Claims, Whether Rooted in State or Federal law, Are Barred by the Absence of Malice and the Existence of Probable Cause

Plaintiffs' claims against Individual Defendants for malicious prosecution fail in several respects. First, the facts make clear that probable cause existed for their prosecution, and second, none of the vague allegations regarding how the investigation willfully ignored evidence undermines the presence of probable cause. In order for Plaintiffs to succeed on a claim of malicious prosecution, they must show the Defendants caused a seizure pursuant to legal process *unsupported by probable cause*, and criminal proceedings terminated in Plaintiffs' favor. *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (emphasis added); *see also Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012). Plaintiffs' claims fail to plausibly meet these elements.

### A.   Probable Cause for Prosecution of Plaintiffs

As detailed in the Complaint, probable cause existed to arrest Plaintiffs for the underlying murder. Probable cause "is an objective standard of probability that reasonable and prudent persons apply in everyday life… and determined by a 'totality of the circumstances' approach." *U.S. v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998) (citing *Illinois v. Gates*, 462 U.S. 213, 230 (1983)). Probable cause for an arrest means "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed… an offence." *Id*. (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).

In the investigation of the underlying murder, Diane Bailey, Keisha Thompson, and Marcus

King all identified Plaintiffs as having a role in the murder. Compl. at ¶¶ 37, 55. The facts and circumstances known to Individual Defendants at the time of Plaintiffs' arrest were such that a reasonable person would believe Plaintiffs participated in the underlying murder. *See Durham*, 690 F.3d 183, 189 (citing *Gerstein v. Pugh*, 420 U.S. 103 (1975) ("It has long since been settled by the Supreme Court that an indictment, fair upon its face, returned by a properly constituted grand jury, conclusively determines the existence of probable case.") (internal quotation marks omitted)). As such, the presence of probable cause automatically invalidates a malicious prosecution claim, and it should be dismissed accordingly.

### B. Plaintiffs' Contention that Individual Defendants Ignored Evidence Known To Undermine the Probable Cause is Entirely Based on Assumptions

As stated previously, Plaintiffs have provided no factual support for their conclusion that Individual Defendants knew that Diane Bailey could not have witnessed the murder and that Marcus Bailey's inculpating statement was false. When allegations in a complaint are mere conclusions, they are not entitled to an assumption of truth and must be dismissed. *Ashcroft*, 556 U.S. at 679. Since Plaintiffs' conclusory allegations that Diane Bailey and Marcus Bailey gave false statements and that Individual Defendants were aware of their falsity are unsupported by any plausible facts, Plaintiffs' claims for malicious prosecution lack merit.

### C. Absence of Any Evidence of Malice is Fatal to the State Claim

To state a claim for malicious prosecution under Maryland law, Plaintiffs must allege that Defendants acted with malice or had a primary purpose other than legitimately bringing an offender to justice. *Burley v. Baltimore Police Dep't*, 422 F. Supp. 3d 986, 1035 (D. Md. 2019) (citing *Okwa v. Harper*, 360 Md. 161, 183, 757 A.2d 118, 130 (2000)). Negligence in instituting an unjustified criminal proceeding does not satisfy the malice element. *Montgomery Ward v. Wilson*, 339 Md. 701, 719, 664 A.2d 916, 925 (1995). For the same reasons that Plaintiffs fail to

negate probable cause in this case, they similarly fail to provide any factual support that Individual Defendants ever exhibited actual malice. As such, this claim is deficient and should be dismissed.

## IV.      Failure to Intervene

Plaintiffs literally provide no facts at all in support of the failure to intervene count. For liability to attach to a police officer's failure to intervene, the officer must have had reason to know that a constitutional deprivation was taking place and had a realistic opportunity to intervene to prevent the deprivation. *Burley*, 422 F. Supp. 3d at 1030 (quoting *Randall v. Prince George's Cty.*, 302 F.3d 188, 203 (4th Cir. 2002)). Here, Plaintiffs offer "a formulaic recitation of the elements of a cause of action" without any specific facts to explain why this claim is appropriate. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). The Complaint only provides that the facts necessary to support a failure to intervene claim are included "in the manner described above." *See.* Compl. at 140. The complete absence of facts included in this count is reflective of the absence of facts in the record that support the argument that a constitutional deprivation ever occurred or that Individual Defendants could have ever been aware that one took place. As such, the Complaint fails to satisfy the pleading requirements and dismissal is appropriate. *Iqbal*. 556 U.S. at 678 (quoting *Twombly* 550 U.S. at 555)

## V.      Any Claim for Unlawful Detention Is Precluded by Probable Cause and, In Any Event, Is Time Barred

### A.  Probable Cause Precludes Any Unlawful Detention Claim

For the same reasons Plaintiffs' malicious prosecution counts fail due to the existence of probable cause, Plaintiffs' detention without probable cause claim is similarly deficient. A reasonable and prudent officer would have believed that probable cause, a standard that requires more than bare suspicion but less than the evidence needed to secure a conviction, existed after independent witnesses identified Plaintiffs for their role in the crime. *See Smith v. Munday*, 848

F.3d 248, 253 (4th Cir. 2017) (quoting *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998)). As Plaintiffs cannot negate the fact that a reasonable officer would have believed that probable causes was established in this case, Plaintiffs' claim for detention without probable cause is deficient.

### B.  Alternatively, the Unlawful Pretrial Detention Claim Is Time Barred

Plaintiffs' unlawful pretrial detention claims are based upon *Manuel v. City of Joliet*, 137 S. Ct. 911, 917 (2017), which held that the Fourth Amendment governs claims for unlawful pretrial detention even beyond the start of legal process. In *Manuel*, the court permitted plaintiffs to bring civil claims against police officers seeking redress for their pretrial detentions under the Fourth Amendment even after the plaintiff received a *Gerstein* hearing finding probable cause for the detention. *Id.* The court remanded the case to the Seventh Circuit, however, in order to determine when such a claim accrues.

On remand, the Seventh Circuit held that a Fourth Amendment claim challenging a plaintiff's allegedly wrongful detention accrues when the detention ends. *Manuel v. City of Joliet*, 903 F.3d 667 (7th Cir. 2018) (*Manuel II*). The court rejected an accrual rule starting from the time of a judicial determination of probable cause and likewise rejected an accrual rule based upon the disposition of criminal charges. *Id.* Instead, the court explained that, "because the wrong is the detention rather than the existence of criminal charges, the period of limitations also should depend on the dates of the detention. The wrong of detention without probable cause continues for the duration of the detention." *Id.* at 670. The accrual of time thus begins upon conviction.

Here, the pretrial detention ended when Plaintiffs were convicted on May 18, 1995. Compl. at ¶75. Because Plaintiffs' lawsuit was not filed until March 26, 2020, the pretrial detention claim is time barred. *See Owens*, 767 F.3d at 388 (providing that section 1983 suits have a three-year

17

limitations period under Maryland law); *Brown v. City of Chicago*, 2019 WL 4958214 *3 (N.D.Ill. Oct. 8, 2019) (dismissing pretrial detention claim as time barred because it accrued upon conviction and was not subject to any delayed accrual rule).

## VI.    This Court Should Dismiss Plaintiffs' Conspiracy Claims Due to Improper Pleading and the Fact that They Are Barred by the Intracorporate Conspiracy Doctrine

### A.    Plaintiffs Fail to Plead Facts Sufficient to Establish the Elements of Conspiracy Under § 1983

To state a claim for civil conspiracy under § 1983, Plaintiffs must allege that the Defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [plaintiff's] deprivation of a constitutional right." *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996). This requires more than merely "a naked assertion of conspiracy." *Shooting Point, L.L.C. v. Cumming*, 243 F. Supp. 2d 536, 537 (E.D. Va. 2003). A plaintiff must plead facts that would "reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Hinkle*, 81 F.3d at 421.

Here, the Complaint makes the conclusory allegation that Individual Defendants conspired to initiate and continue criminal proceedings against Plaintiffs without probable cause and violated their constitutional rights by failing to disclose exculpatory evidence and fabricating evidence. The Complaint contains no specific facts from which the Court could infer that Individual Defendants collectively reached a positive or tacit understanding of a shared common purpose. This is insufficient to state a plausible claim for relief, and Plaintiffs' conspiracy claims must be dismissed.

### B.    The Same Deficiencies Exist in the State Claim

Under Maryland law, a civil conspiracy requires "(1)a confederation of two or more

persons by agreement or understanding; (2) some unlawful or tortious act done in furtherance of the conspiracy or use of lawful or tortious means to accomplish an act not in itself illegal; and (3) actual legal damages resulting to the plaintiff." *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 154, 916 A.2d 257, 284 (2007) (quoting *Van Royen v. Lacey*, 262 Md. 94, 97-98, 277 A.2d 13, 14-15 (1971)). For the reasons already stated above, the Complaint fails to plead sufficient facts to establish an underlying agreement or understanding. Thus, the state claim for conspiracy is similarly deficient and must be dismissed.

## C.     Any Claims for Conspiracy Are Barred by the Intracorporate Conspiracy Doctrine.

The intracorporate conspiracy doctrine provides an additional basis for dismissal of Plaintiffs' claims for conspiracy. "It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy*." Buschi v. Kirven*, 775 F.2d 1240, 1251 (4th Cir. 1985) (quoting *Nelson Radio & Supply Co. v. Motorola, Inc*., 200 F.2d 911, 914 (5th Cir. 1952)). Because "acts of the agent are the acts of the corporation," agents of the same organization do not provide the plurality of actors needed for a conspiracy. *See id*. (quoting *Nelson Radio*, 200 F.2d at 914); *see also Copperweld Corp. v. Independence Tube Corp*., 467 U.S. 752, 769 (1984). This legal principle is commonly referred to as the "intracorporate conspiracy doctrine." The Fourth Circuit has recognized the application of this doctrine in the civil rights area. *Estate of Bryant v. Baltimore Police Department*, 2020 WL 673751, at *26 (D. Md. Feb. 10, 2020) (citing *Buschi*, 775 F.2d at 1251).

All of the Individual Defendants were police officers with the Baltimore Police Department, and the Complaint alleges that "at all times herein pertinent" Individual Defendants were acting in the capacity of an agent, servant, and employee of the Baltimore Police Department. Compl at ¶¶ 13-14. Under the intracorporate conspiracy doctrine, all acts of Individual Defendants

are considered to be the acts of the Baltimore Police Department, which is a single actor. *See Estate of Bryant*, 2020 WL 673751, at \*26 (dismissing conspiracy claim against individual officers and Baltimore Police Department based on intracorporate conspiracy).  Moreover, Plaintiffs have pleaded no facts indicating any personal stake of the individual Defendants in the alleged conspiracy. *See id. (*citing *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 352 (2013)). Because the Complaint does not allege a conspiracy involving two separate actors, the Complaint fails to state a claim for conspiracy.

**VII.    Plaintiffs Have Not Satisfied the Elements of Intentional Infliction of Emotional Distress**

        "To prove a claim for intentional infliction of emotional distress under Maryland law, Plaintiffs must show that (i) the conduct was intentional or reckless, (ii) the conduct was extreme and outrageous, (iii) the conduct caused emotional distress, and (iv) the emotional distress was severe." *Kashaka v. Baltimore Cty., Maryland,* 450 F. Supp. 2d 610, 619–20 (D. Md. 2006) (citing *Harris v. Jones*, 281 Md. 560, 380 A.2d 611, 614 (1977)). Such claims are "generally disfavored, difficult to establish, and rarely viable." *Johnson v. Baltimore Police Dep't*, 2020 WL 1169739, at 39\* n.17 (D. Md. Mar. 10, 2020). As already indicated *supra*, Plaintiffs have failed to demonstrate with any specificity that Individual Defendants willfully did anything that violated Plaintiffs' constitutional rights. As probable cause existed to arrest Plaintiffs, there is no legitimate factual support for the argument that Individual Defendants' conduct was extreme and outrageous as specifically required by this claim. As such, the claim of intentional infliction of emotional distress should be dismissed.

**VIII.   Plaintiffs' Claim Under Article 24 of the Maryland Declaration of Rights Contains No Supporting Facts and is Duplicative of Count 1**

        Plaintiffs' due process claim under Article 24 of the Maryland Declaration of Rights fails

to state a claim upon which relief can be granted. The four short conclusory sentences that purport to allege a separate count essentially contain nothing more than the bare conclusory assertion that the "Officer Defendants violated Plaintiffs' due process rights." Compl. at ¶ 170. The count further fails to allege any facts that support a claim that Individual Defendants violated any of Plaintiffs' rights. Moreover, save for the paragraph heading, Plaintiffs fail to assert the legal basis for their claim.

To the extent that Plaintiffs rely on allegations of a due process violation "more fully described above," this count is duplicative. The analysis under the state law claim Plaintiffs allude to in the paragraph heading duplicates the analysis of their due process claim under the Fourteenth Amendment in Count I. *See Hawkins v. Leggett*, 955 F. Supp. 2d 474, 496, 2013 WL 3218964 (D. Md. 2013), aff'd sub nom. *In re Canarte*, 558 Fed. Appx. 327, 2014 WL 842111 (4th Cir. 2014). Thus, to the extent Plaintiffs allege a cognizable claim of a due process violation under the Maryland Declaration of Rights, the Court should dismiss this claim as duplicative of Count I.

## IX. Alternatively, Plaintiffs' State Law Claims Should Be Dismissed After Dismissal of the Federal Claims

In the event this Court dismisses the federal claims in Plaintiffs' Complaint as requested in this motion, pendant jurisdiction over the remaining state law claims would disappear. Where federal claims are dismissed before trial, state law claims should be dismissed as well. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). Should this Court dismiss the federal claims in the complaint but decline to rule upon the sufficiency of the state law claims, or if any state law claim survives this motion, the Court should nevertheless dismiss the state law claims for lack of jurisdiction.

## X. Plaintiffs' Vague and Conclusory Allegations Against Individual Defendants as a Group Are Insufficient to Support Any Claim Against Neverdon, Garvey, and Gilbert.

The Complaint should be dismissed as to Defendants Neverdon, Garvey, and Gilbert to the extent it relies on improper shotgun-style allegations. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 556. Under *Twombly*, a plaintiff may not simply list everyone who could have theoretically been involved for each specific act that allegedly occurred. *Proctor v. Metropolitan Money Store, Corp.*, 579 F.Supp.2d 724, 744 (D. Md. 2008). Here, Plaintiffs only allege with any specificity that Detective Neverdon arrived at the crime scene, that Detective Garvey arrived at the crime scene and later interviewed Plaintiffs, and that Detective Gilbert interviewed Plaintiffs. Compl. at ¶¶ 18, 65. The Complaint repeatedly refers to the various Individual Defendants' conduct together instead of allowing each officer's conduct to stand on its own. *See generally Compl*. Section 1983 liability only attaches upon personal participation in a constitutional violation. *Trulock v. Freeh*, 375 F.3d 391, 402 (4th Cir. 2001). Plaintiffs' shotgun-style pleading falls short of facts that could plausibly establish liability for Detectives Neverdon, Garvey, and Gilbert who are not specifically alleged to have had any contact with Diane Bailey or Marcus King. *See Trulock*, 375 F.3d at 402. Thus, they should be dismissed from this action.

## XI.   Individual Defendants are Entitled to Qualified Immunity for Their Actions.

The claims against Individual Defendants under 42 U.S.C. § 1983 are subject to the defense of qualified immunity. Qualified immunity protects officers "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable [officer] would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Immunity is "effectively…lost if a court erroneously permits a case to proceed to trial." *Meyers v. Baltimore Cty., Md.*, 713 F.3d 723, 731

(4th Cir. 2013). Thus, immunity questions should be resolved as early as possible in litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). When an official asserts the defense of qualified immunity, the court must determine whether the plaintiff has plead facts showing "(1) that the officer violated a statutory or constitutional right, and (2) that right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow*, 457 U.S. at 818). Here, Individual Defendants are protected by qualified immunity under both prongs of this test.

Plaintiffs' due process claims fail to establish that a statutory or constitutional right has been violated or that there is any evidence of "bad faith" in order to meet the "clearly established" requirement. *See Owens*, 767 F.3d at 401. Though suppressing exculpatory evidence in bad faith or fabricating evidence would violate clearly established rights, Plaintiffs need to properly allege one piece of exculpatory evidence that was not disclosed. Without knowledge of the alleged exculpatory material, Individual Defendants cannot be liable for failing to disclose it in "bad faith." *See id*. For the reasons already articulated, Plaintiffs have also not supplemented their allegation that evidence was fabricated with any facts that raise their claims to a level of plausibility.

With regards to the other counts, the presence of probable cause that was provided by multiple witnesses who identified Plaintiffs negates any argument that Individual Defendants would have violated any clearly established rights with regards to the other counts. There are thus no plausible allegations to suggest that Plaintiffs' rights have been violated, let alone allegations that would place any objectively reasonable officer on notice that his or her conduct would violate a clearly established right.

These defenses would also individually apply to Defendants Neverdon, Garvey, and Gilbert who are not alleged with any specificity to have had any interaction with the evidence that

is said to have been fabricated or hidden. There is no basis to infer that they were even aware of possible rights that they could have violated, since they had no interactions with the witnesses who formed the probable cause in this case.

## **CONCLUSION**

For the foregoing reasons, Individual Defendants respectfully request that this Court dismiss Counts I-V and VII–X as to all Defendants. Should the Court find that any of those claims survive, Defendants Neverdon, Garvey, and Gilbert should still be dismissed entirely from this action. To the extent that any state law claims survive, this Court should decline to exercise supplemental jurisdiction on the state law claims based on 28 U.S.C. section 1367(c)(3).

Respectfully Submitted,

*/s/ Shneur Nathan*
Shneur Nathan, Bar No. 20707
Avi T. Kamionski, Bar No. 20703
Judson Arnold, Bar No. 21296
33. W. Monroe, Suite 1830
Chicago, IL 60603
(312)612-1955
(952)658-3011
snathan@nklawllp.com
jarnold@nklawllp.com
*Attorneys for Robert Patton,*
*Dave Neverdon, Frank Barlow,*
*Richard Garvey, and Charles Gilbert*

## CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that I have caused true and correct copies of the above and foregoing to be served on all counsel of record via to the Court's CM/ECF system, in accordance with the rules of electronic filing of documents, on July 17, 2020.

Respectfully Submitted,

*/s/ Shneur Nathan*
Shneur Nathan, Bar No. 20707
Avi T. Kamionski, Bar No. 20703
Judson Arnold, Bar No. 21296
33. W. Monroe, Suite 1830
Chicago, IL 60603
(312)612-1955
(952)658-3011
snathan@nklawllp.com
jarnold@nklawllp.com
*Attorneys for Robert Patton,*
*Dave Neverdon, Frank Barlow,*
*Richard Garvey, and Charles Gilbert*