IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KENNETH MCPHERSON AND ERIC SIMMONS | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | )   20-CV-795-SAG ) |
| BALTIMORE POLICE DEPARTMENT, et al., | ) ) ) ) |
| Defendants. | ) |

**REPLY MEMORANDUM BY INDIVIDUAL DEFENDANTS
IN SUPPORT OF THEIR MOTION TO DISMISS**

Defendants, Robert Patton, Dave Neverdon, Frank Barlow, Richard Garvey, and Charles Gilbert, (hereinafter the "Individual Defendants"), by and through their attorneys, Nathan & Kamionski LLP, hereby submit this Reply Memorandum in support of their Motion to Dismiss, and state as follows:

Despite all of the bluster contained in Plaintiffs' Consolidated Response in Opposition to the Officer Defendants and Defendant Baltimore Police Department's Motion to Dismiss, they fail to sufficiently identify one piece of new evidence that has any impact on their constitutional rights. The grievances Plaintiffs focus upon are either entirely speculative or were addressed and rejected in the context of their criminal trial. Plaintiffs received a fair trial and therefore their characterization of the identical evidence should receive the same treatment.

When you strip away the hyperbole from the Complaint, it simply fails to state a claim because:

- There is no new evidence regarding the Diane Bailey or Marcus King, the lynchpins of Plaintiffs' fabrication claim.

- Plaintiffs' fabrication claims lack any specific factual support.

- Plaintiffs do not allege any *Brady* material that was actually withheld.

- Plaintiffs received sufficient discovery regarding Sandra Jackson and the other witnesses referenced in their Complaint.

- Probable cause existed to charge Plaintiffs.

- The remaining state claims are either barred or improperly pled.

- The Complaint does not establish any liability for Defendants Neverdon, Garvey, and Gilbert.

**I.   Plaintiffs' Use of Old Evidence in their Fabrication Claims Fails to Meet the Plausibility Requirement of 12(b)(6)**

To arrive at Plaintiffs' unsupported conclusion that Marcus King and Diane Bailey's statements inculpating Plaintiffs were false and Individual Defendants were aware of their falsity, one must disregard the fact that a jury in 1995 considered Plaintiffs' same allegations regarding these witnesses and disagreed. *See* Compl. at ¶ 75. Plaintiffs now ask the Court to revisit old evidence regarding witnesses long deceased to create a different outcome.[1]

At trial, the jury heard Marcus King testify that Plaintiffs had nothing to do with the shooting and also reviewed his prior recorded statement inculpating Plaintiffs. *Id*. at ¶ 74. When balancing the testimony of a recanting witness with a prior recorded statement by that witness that inculpated Plaintiffs, the jury sided with the latter. *See id*. at ¶ 75. Plaintiffs' attempt to reimagine the argument that Marcus King adopted a false statement that the officers knew was false should similarly fail.

In an attempt to revisit their trial argument that Diane Bailey falsely implicated them in the

---

[1] The certified death records of Marcus King and Diane Bailey, who died on March 26, 2000 and July 8, 2011 respectively, are attached hereto as Ex. 1.

murder, Plaintiffs mischaracterize a crime scene to suit their needs. Though Plaintiffs would like the Court to view the crime scene as static, they acknowledge that the victim was walking north on Washington Street when he was pursued by the offenders before they began exchanging gunfire. *See id.* at ¶ 15. Since Plaintiffs rightfully do not state that Diane Bailey's address is new evidence, the only reasonable inference is that the jury considered Diane Bailey's ability to witness a dynamic crime.

To support their argument that Diane Bailey did not witness the crime, Plaintiffs' once again use their trial tactic of attacking her credibility with her financial motivations to lie. At trial, Plaintiffs' counsel questioned her regarding the benefits that she had received to testify. *See* Mem. Op. Baltimore City Cir. Ct. at 12-13, attached hereto as Ex 2. In addition to this, a memorandum was produced at trial discussing the expenses she was paid, and information regarding those benefits was presented to the jury in closing argument. *Id.* The expenses paid by the State on behalf of Bailey and her location relative to the crime scene were not withheld; indeed, the jury considered this evidence twenty-five years ago and rejected Plaintiffs' characterizations.

**II.     Plaintiffs Do Not Provide a Plausible Basis for a *Brady* Violation**

    **a. Plaintiffs' Claims Involving Sandra Jackson are Deficient and, Further Barred by Plaintiffs' Absence of Reasonable Diligence with Respect to this Witness.**

In Plaintiffs' Consolidated Response in Opposition to the Officer Defendants and Defendant Baltimore Police Department's Motion to Dismiss, Plaintiffs explicitly acknowledge the fact that Sandra Jackson was disclosed as a witness to the murder. Dkt. 26 at p.25. With regards to the allegation that precise details of the descriptions Jackson provided were never disclosed, Plaintiffs' Complaint is notably silent as to any specifics for how the descriptions of the suspects do not match the descriptions of Plaintiffs and their three co-defendants. *See* Compl. at ¶ 20. The

lack of detail is especially telling given the level of treatment regarding Ms. Jackson's description of the crime in the preceding paragraph of the Complaint. *See id*. at ¶ 19 ("Ms. Jackson told them that she saw three black males encounter two other black males at the intersection of Federal and Washington." In fact, the Complaint does not even specify the description Ms. Jackson provided to the police other than "black males." (*Id*. at ¶¶ 19-20). Plaintiffs merely make the conclusory allegation that some unidentified exculpatory account from Ms. Jackson was not disclosed. *(See id*. at ¶ 63) (alleging descriptions were withheld without providing any detail whatsoever about those descriptions). Thus, this allegation is not entitled to an assumption of truth and must be disregarded. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Like a house of cards, Plaintiffs attempt to build upon their inadequate allegations regarding Ms. Jackson to argue that Ms. White gave a similar description. But the allegations with respect to Ms. White fare no better because the Complaint merely alleges that she gave a description of "two black men." (Compl. at ¶ 24). With respect to Mr. Martin, the complaint merely states that "the BPD Defendants obtained a witness statement" from him but is entirely silent as to the content of that statement. (*Id*. at ¶ 26). This omission is fatal to the *Brady* claim because the Complaint fails to identify anything exculpatory which allegedly was withheld.

In the absence of any evidence of Individual Defendants' intentional misconduct, this speculation is not entitled to an assumption of truth without any factual enhancement. *Ashcroft,* 556 U.S. at 679. Though Plaintiffs rely on *Estate of Bryant* to suggest that all inferences must be drawn in their favor, that case clearly provides that such inferences are required to be reasonable. *Estate of Bryant v. Baltimore Police Dep't*, 2020 WL 673571, at *9 (D. Md. Feb. 10, 2020) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus, Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

The giant leaps that Plaintiffs ask the Court to make here are not based on any factual allegations and therefore are nothing more than speculation piled on rank speculation.

Plaintiffs also incorrectly state that reasonable diligence is not an appropriate argument at this stage of the litigation. On the contrary, when there are sufficient facts alleged within a complaint to rule on an affirmative defense, the defense may be reached by a motion to dismiss filed under Rule 12(b). *Goodman v. Praxair*, Inc., 494 F.3d 458, 464 (4th Cir. 2007). Here, Plaintiffs acknowledge receiving part of Sandra Jackson's statement that indicated she was a witness to the crime. None of the cases cited by Plaintiffs support the proposition that it is reasonable for a defense attorney to not attempt to interview a known witness to the homicide for which their client is charged. *See Holland v. City of Chicago*, 643 F.3d 248, 255 (7th Cir. 2011) (stating that the exercise of reasonable diligence demands that an interview with an eyewitness would include the topic of the identification)). Because it is undisputed that Ms. Jackson was disclosed as a witness and Plaintiffs' complaint fails to specify how the account of Jackson would be exculpatory, this witness cannot serve as the predicate for a *Brady* claim.

b.  **Daniel Ellison's Statement Was Disclosed and Any Notes Are Cumulative**

Daniel Ellison was a co-defendant of Plaintiffs who said that Plaintiffs had nothing to do with the shooting. Compl. at ¶ 69. Plaintiffs concede that Daniel Ellison's taped, exculpatory statement to this effect was disclosed to them. *See id*. at ¶ 83. Nevertheless, Plaintiffs speculate that notes from this taped interview would have contained additional exculpatory evidence. The problem with this argument is that Plaintiffs fail to properly identify one shred of information not already contained in the statement. As such, the notes from Ellison's interview, to the extent they ever existed, would have substantively already been included in the interview that was disclosed and thus do not qualify as exculpatory material. *See United States v. Bartko*, 728 F.3d 327, 339

(4th Cir. 2013) (quoting *United States v. Ellis*, 121 F.3d 908, 916 (4th Cir.1997) ("courts of necessity examine undisclosed evidence item-by-item, their materiality determinations must evaluate the cumulative effect of all suppressed evidence to determine whether a Brady violation has occurred."). Requiring that the Complaint merely allege one piece of additional information included in the notes that was not part of the disclosed statement is not heightening the pleading standard as Plaintiffs allege. Plaintiffs, however, failed to identify **any** exculpatory evidence which was withheld with respect to Ellison.

In recognizing this deficiency, Plaintiffs now suggest that the Court should grant it leave to amend their Complaint to include additional facts. Such a request should be denied as futile because Plaintiffs fail to sufficiently identify the additional facts that they would add to their complaint in order to piece together a proper claim based on Ellison. Accordingly, the *Brady* claim should be dismissed.

### III. Plaintiffs' State Claims are Improperly Pled

#### a. Probable Cause Existed to Charge Plaintiffs

The flip side of the axiom that defendants may not manufacture their own probable cause based on knowingly false evidence is that Plaintiffs similarly may not ignore its existence to suit their needs. In the investigation of the underlying murder, Diane Bailey, Keisha Thompson, and Marcus King all identified Plaintiffs as having a role in the murder. Compl. at ¶¶ 37, 55. As Plaintiffs have failed to bolster the plausibility of any fabrication claim beyond the same cross-examination points which were rejected by the jury at their criminal trial, the Complaint fails to allege how this identical evidence did not amount to the relatively modest probable cause standard. The presence of probable cause requires the dismissal of Plaintiffs' state claims.

#### b. Plaintiffs' Conspiracy Claims Should Not Survive a Motion to Dismiss

Plaintiffs' conspiracy claims offer no more than "a naked assertion of conspiracy" and should thus be dismissed. *See Shooting Point, L.L.C. v. Cumming*, 243 F. Supp. 2d 536, 537 (E.D. Va. 2003). The Complaint contains no specific facts from which the Court could infer that Individual Defendants collectively reached a positive or tacit understanding of a shared common purpose. *Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 421 (4th Cir. 1996).

In an attempt to avoid the application of the intracorporate conspiracy doctrine, Plaintiffs remarkably suggest without any factual support that employees of the Baltimore Police Department entered into a conspiracy with a trooper employed by the Maryland State Police. Though they only allege that Trooper First Class Jody Ressin participated in the interview of Marcus King, Plaintiffs ask the court to draw an inference that he was part of a broader conspiracy to frame Plaintiffs. Plaintiffs have provided no facts to allow the court to draw inferences from a close working relationship between these officers, a deliberate strategy, or any unlawful conduct. *See Daughtry v. Kessler*, 264 Md. 281, 292 (1972). On the contrary, Plaintiffs only stress the practices and policies of BPD and do not reference any other agencies. Plaintiffs' should not be allowed to twist an isolated reference to an employee of another police agency into a shared common purpose where none existed.

## IV. Defendants Neverdon, Garvey, and Gilbert Should Be Dismissed

Plaintiffs acknowledge that the use of group pleading is only appropriate if they properly allege that Individual Defendants have participated in a scheme involving the same conduct. *See Sprint Nextel Corp. v. Simple Cell, Inc.*, No. CCB-13-617, 2013 WL 3776933 at *2 (D. Md. July 17, 2013). Here, Plaintiffs only allege with any specificity that Detective Neverdon arrived at the crime scene, that Detective Garvey arrived at the crime scene and later interviewed Plaintiffs, and that Detective Gilbert interviewed Plaintiffs. Compl. at ¶¶ 18, 65. Regarding Neverdon, the

Complaint fails to explain how his mere presence at the crime scene would subject him to sweeping liability. Regarding Defendants Garvey and Gilbert, since there are no allegations of misconduct connected to the interviews of Plaintiffs, these defendants should be dismissed based on the absence of any personal involvement. *See id*. at ¶ 66. As such, Plaintiffs' shotgun-style pleading falls short of facts that could plausibly establish any liability for Detectives Neverdon, Garvey, and Gilbert.

WHEREFORE, Individual Defendants respectfully request this Court to dismiss each and every Count alleged against them in Plaintiffs' Complaint. Further, Individual Defendants request this Court to grant all other relief it deems just and proper.

Respectfully Submitted,

*/s/ Shneur Nathan*
Shneur Nathan, Bar No. 20707
Avi T. Kamionski, Bar No. 20703
Judson Arnold, Bar No. 21296
33. W. Monroe, Suite 1830
Chicago, IL 60603
(312)612-1955
(952)658-3011
snathan@nklawllp.com
jarnold@nklawllp.com
*Attorneys for Robert Patton,*
*Dave Neverdon, Frank Barlow,*
*Richard Garvey, and Charles Gilbert*

## **CERTIFICATE OF SERVICE**

I, the undersigned attorney, hereby certify that I have caused true and correct copies of the above and foregoing to be served on all counsel of record via to the Court's CM/ECF system, in accordance with the rules of electronic filing of documents, on September 8, 2020.

                                          Respectfully Submitted,

                                          */s/ Shneur Nathan*
Shneur Nathan, Bar No. 20707
Avi T. Kamionski, Bar No. 20703
Judson Arnold, Bar No. 21296
33. W. Monroe, Suite 1830
Chicago, IL 60603
(312)612-1955
(952)658-3011
snathan@nklawllp.com
jarnold@nklawllp.com
*Attorneys for Robert Patton,*
*Dave Neverdon, Frank Barlow,*
*Richard Garvey, and Charles Gilbert*