**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **KENNETH MCPHERSON,** *et al.*, | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **v.** | * | **Civil Case No. SAG-20-0795** |
| | * | |
| **BALTIMORE POLICE DEPARTMENT,** | * | |
| *et al.*, | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**<u>MEMORANDUM OPINION</u>**

This case arises out of the arrest, prosecution, and conviction of Plaintiffs Kenneth

McPherson and Eric Simmons (collectively, "Plaintiffs") for conspiracy to murder Anthony

Wooden in 1984-1985.  Plaintiffs' convictions were vacated in 2019, after their attorneys and the

Conviction Integrity Unit of the Baltimore City State's Attorney's Office filed a Joint Petition for

Writ of Actual Innocence.  On March 26, 2020, Plaintiffs filed a Complaint against the Baltimore

Police Department ("BPD") and five named defendants who served as BPD detectives during the

investigation of Wooden's murder, Robert Patton, Dave Neverdon, Frank Barlow, Richard

Garvey, and "Detective Gilbert" (collectively, "the Officer Defendants"), along with "unknown

employees of the Baltimore Police Department."  BPD and the Officer Defendants have each filed

Motions to Dismiss the Complaint ("the Motions").  ECF 21, 18 (respectively).  The Court has

reviewed each Motion, along with the related Oppositions and Replies thereto.  *See* ECF 26, 29,

30.  No hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2018).  For the reasons that follow, the

Motions will be granted in part and denied in part.

I.      **FACTUAL BACKGROUND**

The following facts from the Complaint are accepted as true, and all reasonable inferences are drawn in Plaintiffs' favor. *See, e.g., E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). On August 31, 1994, near the intersection of North Washington Street and Federal Street in Baltimore City, a group of men approached Anthony Wooden from behind to rob him. ECF 1 ¶ 15. Wooden pulled out a gun, and he and the would-be robbers exchanged gunfire, resulting in Wooden's death. *Id.*

Defendant Patton served as the lead detective on the Wooden homicide, with Defendant Barlow as his partner. *Id.* ¶ 18. Defendants Patton, Neverdon, Barlow, and Garvey all arrived on the homicide scene, and the officers began to interview potential witnesses. *Id.* ¶ 19. "BPD Officer Defendants, including Defendants Barlow and Patton," interviewed Sandra Jackson, who described three black males encountering two other black males at the intersection, and provided detailed physical descriptions of the men. *Id.* ¶¶ 20, 21. Jackson expressed willingness to participate in a procedure to identify the suspects. *Id.* ¶ 22. Jackson told "the BPD Officer Defendants" that she believed one of the suspects had recently robbed her niece, and provided her niece's name and contact number to the officers. *Id.* ¶ 23.

Another witness, Crystal White, told "BPD Officer Defendants, including Defendant Barlow" that she observed the victim at Federal and Washington running north, before she heard shots and saw the victim fall. *Id.* ¶ 24. White saw two black men at the intersection just before the shooting started, and she was able to provide a description of one of the subjects. *Id.* ¶¶ 24, 25.

A woman named Diane Bailey, who lived just over a block away from the murder, approached the officers to tell them that she had overheard people discussing that Daniel Ellison

and Nicholas Richards had intended to commit a robbery, and were involved in the shooting. *Id.* ¶¶ 27, 28. Bailey met with "BPD Officer Defendants, including Defendants Patton and Barlow," but the notes of the officers' initial conversation with Bailey were not produced to Plaintiffs in discovery. *Id. ¶* 29. "BPD Officer Defendants" arranged for Bailey to view a photographic line-up to identify people involved. *Id.* ¶ 30. The Complaint alleges that Bailey had previously served as an informant and had received financial benefits from the BPD in that context. *Id.* ¶ 32. According to Plaintiffs, because of Bailey's great financial need, she was susceptible to conforming her story to the officers' wishes. *Id.* ¶ 32.

The "BPD Officer Defendants, including Defendant Patton" interviewed Bailey's daughter, Keisha Thompson, together with Bailey, instead of taking separate statements from the two women. *Id.* ¶ 34. As a result, Thompson provided identical information to that provided by Bailey. *Id.* ¶ 36. Thompson and Bailey identified Plaintiffs in a photographic lineup, along with Ellison and Richards, and a 13-year old named Marcus King, who was a known acquaintance of Ellison and Richards. *Id.* ¶ 37. The "BPD Officer Defendants then directed Ms. Bailey and her daughter Ms. Thompson to repeat their false identifications of Plaintiffs at a live line-up." *Id.* ¶ 38. Plaintiffs contend that the officers knew that Bailey and Thompson had not seen the shooting and were unable to make reliable identifications of the persons involved. *Id.* ¶ 39.

On September 6, 1994, BPD arrested Plaintiffs and Marcus King. *Id.* ¶ 41. Upon arrival at the police station, Marcus was handcuffed to a chair, placed in leg irons, and interviewed with no parent present. *Id.* ¶¶ 42-45. Plaintiffs allege that Marcus's interviewers consisted of "the BPD Officer Defendants, including Defendants Patton and Barlow, alongside Trooper [First Class Jody] Ressin" of the Maryland State Police. *Id.* ¶ 50. Plaintiffs allege that the interviewing officers used "harsh interrogation tactics" and intimidation, and eventually "fed Marcus 'facts' about the crime"

to procure a false statement implicating Plaintiffs. *Id.* ¶¶ 46-50. Marcus's initial statement that neither Plaintiff was involved was rejected by the interviewing officers, who "insisted that he give a different answer." *Id.* ¶¶ 51-52. By the end of the interrogation, "the BPD Officer Defendants, including Defendants Patton and Barlow, and Trooper Ressin succeeded in forcing Marcus to adopt a false statement that corroborated Ms. Bailey's statement." *Id.* ¶ 55.

In addition to knowingly manufacturing false evidence from Bailey, Thompson, and Marcus, the "BPD Officer Defendants" did not follow up on the witnesses who had actually witnessed the shooting: Jackson, White, and Martin. *Id.* ¶ 60. Plaintiffs allege that "the BPD Officer Defendants" failed to disclose the detailed descriptions Jackson had provided of the shooters to the prosecution or the defense, and did not disclose the existence of Jackson's niece as a potential source of relevant information. *Id.* ¶¶ 63-64.

Upon Plaintiffs' arrest, they were taken to the police station, where they were questioned by officers including Defendants Patton, Barlow, Gilbert, and Garvey. *Id.* ¶ 65. Plaintiffs denied any participation in the crime. *Id.* ¶ 66. Ellison, who was also arrested on the same day, admitted to his participation in the murder and identified other persons involved, but affirmatively stated that Plaintiffs and Marcus were not involved. *Id.* ¶¶ 68-69. Nevertheless, after in-person line-up identifications from Bailey and Thompson, "the BPD Officer Defendants" submitted their evidence, including the identifications, to the Baltimore City State's Attorney's Office, which presented evidence to a grand jury and secured indictments of Plaintiffs. *Id.* ¶¶ 71-72.

In May, 1995, Marcus testified at Plaintiffs' trial that neither he nor Plaintiffs had any involvement in the murder, but his prior statement to the officers during the coercive interview was introduced to corroborate Bailey's statement. *Id.* ¶ 74. Ultimately, the jury convicted Plaintiffs of conspiracy to murder Wooden, but acquitted them of the murder charge. *Id.* ¶¶ 73,

75.  Plaintiffs received life sentences, despite continuing to maintain their innocence at their sentencing hearings.  *Id.* ¶¶ 76-78.

Approximately twenty-four years later, on May 3, 2019, following investigation by the SAO's Conviction Integrity Unit, the Mid-Atlantic Innocence Project and the University of Baltimore School of Law's Innocence Project, the Circuit Court ordered a new trial for Plaintiffs, and the State of Maryland entered a *nolle prosequi* as to all charges.  *Id.* ¶¶ 80, 81, 84-85.

This action followed. Plaintiffs contend that the Officer Defendants engaged in misconduct and actively pursued their wrongful convictions, in accordance with policies and practices maintained by BPD.  Plaintiffs further contend that BPD failed to train, supervise and discipline its employees with respect to investigating crimes and disclosing exculpatory evidence.  Plaintiffs seek recovery of compensatory damages, punitive damages, and reasonable attorneys' fees based on eleven specific claims for relief.  Count I alleges that the Officer Defendants deprived Plaintiffs of their Fourteenth Amendment right to due process, in violation of 42 U.S.C. § 1983.  *Id.* ¶¶ 118-125.  Count II asserts a federal claim for malicious prosecution against the Officer Defendants, also under § 1983.  *Id.* ¶¶ 126-32.  Count III alleges that the Officer Defendants violated Plaintiff's Fourth Amendment rights by detaining them without probable cause, in violation of § 1983.  *Id.* ¶¶ 133-38.  Count IV asserts that the Officer Defendants failed to intervene, in violation of § 1983.  *Id.* ¶¶ 139-42.  Count V once again cites § 1983, and charges a conspiracy to deprive constitutional rights against the Officer Defendants.  *Id.* ¶¶ 143-49.  Count VI asserts a claim against BPD, alleging its liability for the various constitutional violations described above, pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  *Id.* ¶¶ 150-54.  Count VII, VIII, IX, and X assert state law claims against the Officer Defendants, for malicious prosecution, intentional infliction of emotional distress, civil conspiracy, and violation of due process rights conferred by

Article 24 of the Maryland Constitution, respectively.  *Id.* ¶¶ 155-72.  Finally, Count XI seeks to compel the BPD to indemnify the Officer Defendants, upon a finding of their liability to Plaintiffs. *Id.* ¶¶ 173-75.

## II.   LEGAL STANDARDS

Defendants have filed motions to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), which permits defendants to test the legal sufficiency of a complaint's allegations.  ECF 18, 21; *see, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions.'"); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

6

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co.*, 637 F.3d 435 at 440 (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, a court is not required to accept legal conclusions drawn from the facts. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

## III.   ANALYSIS

The pending Motions seek to dismiss each Count of the Complaint. Generally, the Officer Defendants argue that Plaintiffs have failed to state a claim for a *Brady* violation, fabrication of evidence, malicious prosecution, failure to intervene, unlawful detention, civil conspiracy,

intentional infliction of emotional distress, or violation of the Maryland constitution. ECF 19 at 5-21. They further contend that Plaintiff's allegations against Defendants Neverdon, Garvey, and Gilbert are insufficient, and that all of the Officer Defendants are entitled to qualified immunity. *Id.* at 21-24. The BPD argues that it is not liable because the individual defendants are not liable, because Plaintiffs' indemnification claim is premature, and because it is protected by sovereign immunity to the § 1983 claims. ECF 21-1.

Before addressing these arguments, however, the Court must determine whether the two exhibits attached to the Officer Defendants' Motion may be considered at this stage. Specifically, the Officer Defendants attached a 2006 opinion from the Circuit Court for Baltimore City adjudicating Plaintiff McPherson's post-conviction petition, and death certificates for Diane Bailey and Marcus King. ECF 19-1, 19-2. Plaintiffs do not expressly challenge the authenticity of the exhibits, but argue that the opinion cannot be used for the purpose the Officer Defendants intend. ECF 26 at 27-29.

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger*, 510 F.3d 442, 450 (4th Cir. 2007). However, a court may properly consider documents incorporated into the complaint or attached to the motion to dismiss, "so long as they are integral to the complaint and authentic." *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). The Court may also consider "matters of which a court may take judicial notice." *Tellabs, Inc.*, 551 U.S. at 322; *see* Fed. R. Evid. 201; *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) (characterizing this as a "narrow

exception" to the general rule that the Court's analysis must be limited to the four corners of the Complaint, and all documents integrated therein). Even when taking notice of such facts, the Court must still construe them in a light most favorable to Plaintiffs. *Zak*, 780 F.3d at 607. Moreover, even when taking judicial notice of matters of public record, a court is limited to notice of adjudicative facts "beyond reasonable controversy." *See Estate of Bryant,* 2020 WL 673571, at *10.

The 2006 opinion and the death certificates cannot be described as integral to Plaintiffs' Complaint, which references neither, so the only avenue for their consideration is judicial notice. The issue is immaterial as to the death certificates, because the availability of Bailey or King as witnesses plays no role in this Court's analysis below. With respect to the 2006 opinion, while this Court is permitted to take judicial notice of the existence of another court's opinion, it cannot credit the facts found by that court. *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (quoting *Southern Cross Overseas Agencies, Inc. v. Wah Hwong Shipping Group Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999) ("On a Rule 12(b)(6) motion to dismiss, when the court takes judicial notice of another's opinion, it may do so not for the truth of the facts cited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity."). The Officer Defendants seek to rely on the opinion to establish facts relating to the disclosure of Ellison's statement. ECF 19 at 8 ("Additionally, a trial court sitting in review of Plaintiffs' trial counsel's performance has already determined that, 'trial counsel was aware of Ellison's statement well before the hearing.'"). Those facts relating to the timing and substance of the disclosure are clearly disputed in this litigation. The Officer Defendants do not appear to contest Plaintiffs' arguments on this point in their Reply. This Court will therefore take judicial notice of the opinion, but will not consider its content.

9

**A. Adequacy of Plaintiffs' Allegations as to Defendants Neverdon, Garvey, and Gilbert**

The Complaint, as pled, fails to state a claim against three of the Officer Defendants: Neverdon, Garvey, and Gilbert. Other than the introductory paragraphs of the Complaint establishing the identities of the parties, the individual allegations naming those officers are limited to the following:

- "Defendants Patton, Neverdon, Barlow, and Garvey arrived on the [Wooden homicide] scene shortly thereafter." ECF 1 ¶ 18.

- "On September 6, 1994, Plaintiffs were arrested and taken to the police station, where they were interrogated by the BPD Officer Defendants, including Defendants Patton, Barlow, Gilbert, and Garvey." *Id.* ¶ 65.

Other than those two innocuous allegations—neither of which are tied to the specific instances of alleged investigative misconduct at issue here—the remainder of the Complaint refers generally to "the BPD Officer Defendants." In light of the other allegations in this case, that generic phrasing is insufficient to justify an inference, even taken in the light most favorable to Plaintiffs, that relief could be granted against Neverdon, Gilbert, and Garvey. The most problematic accusations against Defendants Patton and Barlow are those pertaining to their meetings and lineups with Diane Bailey and her daughter, and their interview with Marcus King. The Complaint does not allege that Neverdon, Gilbert, and Garvey were even present at any of those events. While group pleading can be permissible in certain circumstances, it must be "plausible that each defendant was involved in all of the facts as alleged." *See Sprint Nextel Corp. v. Simple Cell, Inc.*, Civil No. CCB-13-617, 2013 WL 3776933, at *2 (D. Md. July 17, 2013). Plaintiffs here simply attempt to use group pleadings to extend their conspiracy allegations to officers who had no specifically

alleged involvement in the problematic portions of the investigation, without pleading any plausible factual basis to do so.

Plaintiffs' attempt to analogize their case to *Burgess v. Balt. Police Dep't.*, Civil No. RDB-15-0834, 2016 WL 795975 (D. Md. Mar. 1, 2016), is misplaced. In response to the defendants' charge of "group pleading," the *Burgess* Court credited the Plaintiff's representation that "his use of the collective noun is not an effort to name 'everyone that *could* have been involved,' but rather a calculated decision to accuse all named parties." *Id.* at \*10 (internal quotation omitted). That position is not plausible here where, for example, Plaintiff does not even allege Detective Gilbert's presence at the homicide scene, but then, via use of "the BPD Officer Defendants," apparently includes Gilbert in the list of persons alleged to have taken specific actions at the scene. This inherent inconsistency makes clear that Plaintiffs have engaged in improper group pleading, and not the intentional use of a collective phrase to describe actions taken simultaneously and jointly by multiple individuals. Plaintiffs have not pled facts from which this Court can plausibly infer Neverdon, Gilbert, or Garvey's knowledge of the allegedly false information, their participation in a decision not to disclose exculpatory information, or even their awareness that Patton, Barlow, or Trooper Ressick engaged in any unconstitutional actions.

Further, the failure to intervene count in Count IV similarly fails against Neverdon, Garvey, and Gilbert. That Count contains no additional factual allegations, but simply alleges that "in the manner described above, by their conduct and under color of law, during the constitutional violations described herein, one or more of the BPD Officer Defendants stood by without intervening to prevent the violation of Plaintiffs' constitutional rights, even though they had the opportunity to do so." ECF 1 ¶ 140. Other than improper group pleadings, the Complaint's factual allegations do not even put Neverdon, Garvey, or Gilbert in a position where they could

have observed the alleged violations of Plaintiffs' constitutional rights, or "stood by" while they occurred.[1]  Therefore, Plaintiffs' claims will be dismissed, without prejudice, as to those three defendants.

### B.  Adequacy of Plaintiffs' Allegations Against Defendants Patton and Barlow

In contrast, the Complaint contains multiple specific factual allegations against Defendant Patton, who was the lead detective on the Wooden homicide, and his partner, Defendant Barlow. *See* ECF 1 ¶ 18.  Specifically, Patton and Barlow are alleged to have interviewed Sandra Jackson, obtained her detailed eyewitness account of the shooting, including physical descriptions that do not match Plaintiffs, and procured the contact information for her niece, who may have been robbed by one of the suspects the week prior.  *Id.* ¶¶ 20, 21.  Patton and Barlow are also alleged to have participated in the interviews of Diane Bailey and her daughter, Keisha Thompson, and to have intentionally suggested to them Plaintiffs' involvement in the homicide, despite knowing from the testimony of the eyewitnesses that Plaintiffs were not involved, and despite knowing from the location of their residence that the women had not observed the shooting.  *Id.* ¶¶ 29-39.  Patton and Barlow are alleged to have participated, with Trooper Ressin, in a coercive interview of the teenaged witness, Marcus King, and are alleged to have "fed" him a false version of the events that included Plaintiffs' involvement in the murder.  *Id.* ¶¶ 41-59.  Patton and Barlow are alleged to have participated in an interview with Daniel Ellison, during which he admitted his participation in Wooden's murder, and unequivocally stated that Plaintiffs were not involved.  *Id.* ¶ 69.

---

[1] Relatedly, the Complaint does not even place the alleged violations of constitutional rights in a location where Neverdon, Gilbert, or Gauvey had responded.  For example, the Complaint does not state that the allegedly problematic interviews of Bailey or Thompson occurred at the homicide scene.

In cases like this, which allege unconstitutional action by an arm of the executive branch of government, "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense,'" such that a substantive due process violation lies. *County of Sacramento v. Lewis*, 532 U.S. 833, 846 (1998) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992)). Specifically, the Supreme Court in *Lewis* reaffirmed that only official conduct that "shocks the conscience" will give rise to a substantive due process violation. *Id.* at 846-47; *see also, e.g.*, *United States v. Salerno*, 481 U.S. 739, 746 (1987) ("So-called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' or interferes with rights 'implicit in the concept of ordered liberty.'" (citations omitted)); *Temkin v. Frederick Cty. Comm'rs*, 945 F.2d 716, 720 (4th Cir. 1991) ("[C]onduct which 'amount[s] to a brutal and inhumane abuse of official power literally shocking to the conscience,' violates the substantive guarantees of the Due Process Clause . . . ." (quoting *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980))). The "most likely" sort of conduct to "shock the conscience," the Court noted, was "conduct intended to injure in some way unjustifiable by any government interest." *Lewis*, 532 U.S. at 849 (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). Both a *Brady* violation and the manufacturing or falsification of evidence, when they deprive a plaintiff of the right to a fair trial and result in a deprivation of liberty, can constitute substantive due process violations. *See, e.g.*, *Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017) ("[A] police officer who withholds exculpatory information does not violate the Fourteenth Amendment unless the officer's failure to disclose plausibly deprived the defendants of the 'right to a fair trial.'") (internal citation omitted); *Washington v. Wilmore*, 407 F.3d 274, 282 (4th Cir. 2005) ("Demonstration of a violation of Washington's constitutional rights requires, in this context, proof that Wilmore fabricated evidence and that the fabrication resulted in a deprivation of Washington's liberty.").

### 1. Plaintiffs' *Brady* Claim

Plaintiffs' first substantive due process claim is that Patton and Barlow deprived them of their liberty interests by failing to disclose exculpatory evidence, as required by *Brady v. Maryland*, 373 U.S. 83 (1963). To plead a *Brady* claim, a plaintiff must allege "(1) that the evidence at issue was favorable to him; (2) the Officers suppressed the evidence in bad faith; and (3) prejudice ensued." *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 396-97 (4th Cir. 2014). When, as alleged here, police officers fail to disclose exculpatory evidence, the court can infer bad faith. *Johnson v. Balt. Police Dep't.*, Civil No. ELH-19-00698, 2020 WL 1169739, at *24 (D. Md. Mar. 10, 2020) ("A plaintiff need not demonstrate bad faith directly; it can be inferred through gross deviations from routine police conduct . . . Moreover, bad faith can be inferred when police officers fabricate evidence and fail to disclose especially pertinent exculpatory evidence."). Taken as true at the motion to dismiss phase, Plaintiffs' detailed allegations regarding the withholding of notes from Ellison's interrogation, ECF 1 ¶ 83, Jackson's suspect descriptions that did not match the Plaintiffs, *Id.* ¶ 63, and the identity of Jackson's niece and the potential relevant information she possessed, *Id.* ¶ 64, are more than sufficient to plausibly infer bad faith suppression of evidence in violation of *Brady*.

Patton and Barlow's arguments to the contrary raise significant factual issues about whether certain evidence was or was not disclosed, whether the allegedly undisclosed evidence was material, whether the officers suppressed it in bad faith, and whether defense counsel should have uncovered the evidence in the exercise of reasonable diligence. ECF 19 at 5-9. Yet despite the defendants' intent to contest almost every element of the *Brady* claim, these are factual disputes not suited for resolution at the motion to dismiss stage. Taking the facts alleged as true and in the light most favorable to Plaintiffs, they have plausibly stated a claim that their constitutional rights

were violated by the suppression of Jackson's description of the suspects, the identity of Jackson's niece, and the notes of the interview with Ellison.

### 2. Fabrication of Evidence

Similarly, Plaintiffs' Complaint adequately states a claim for a substantive due process violation, premised on the fabrication of evidence by Patton and Barlow. The law requires Plaintiffs to plead that the Defendants fabricated evidence, and that the fabrication caused a deprivation of liberty. *Washington*, 407 F.3d at 282. Here, Plaintiffs specifically allege that Marcus King told Patton, Barlow, and Ressin that he and the Plaintiffs had no involvement in the murder, but they told him he was wrong and insisted he give a different answer, after feeding him information they wanted him to say. ECF 1 ¶¶ 50-52. Despite his initial resistance, they eventually coerced him into adhering to their story, by holding him in police custody for more than thirteen hours. *Id.* ¶¶ 55-56. Taking those facts as true and in the light most favorable to Plaintiff, there is a plausible basis to infer that Patton and Barlow knew that Marcus's inculpatory statement was false.

Similarly, while Defendants contest whether Plaintiffs can establish the falsity of Diane Bailey's identification (and that of her daughter), taking the facts alleged by Plaintiffs as true and drawing all inferences in their favor, Bailey told the officers she had not seen the shooting or the shooters, but simply had overheard others identifying Ellison and another suspect (not Plaintiffs) as the perpetrators. ECF 1 ¶ 28. Nevertheless, the officers presented her with photographic lineups, not just to identify Ellison and the other name she overheard, but "the shooters." *Id.* ¶ 30.

The fact that Bailey's and Marcus's testimony was subject to cross-examination at trial, and the jury found in favor of the prosecution, cannot conclusively prove that their statements were not fabricated. The Complaint alleges that the Officer Defendants designed the fabricated

statements to corroborate each other, *Id.* ¶¶ 35, 36, 55, which would plausibly bolster the witnesses' ability to survive cross-examination unscathed. The factual issues relating to the indicia of the statements' reliability, or lack thereof, must be explored at a later stage of the proceeding.

### 3.  Malicious Prosecution

The Officer Defendants submit that Plaintiffs' malicious prosecution claim must fail in the absence of malice, and in the presence of probable cause supporting Plaintiffs' arrests. ECF 19 at 14-16. Their contention that probable cause existed is premised entirely on the identifications made by Bailey, Thompson, and Marcus (in his original interview). *Id.* Again, taking as true Plaintiffs' assertions that Patton and Barlow knew that the arrests were unsupported by probable cause because each of those identifications were false, Plaintiffs plausibly pled a malicious prosecution claim. *See Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) ("To state such a claim, a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor."). Moreover, the knowing falsification of evidence, resulting in an absence of probable cause, can constitute malice. *See DiPino v. Davis*, 729 A.2d 354, 374 (Md. 1999) (inferring malice from lack of probable cause); *Butler v. Windsor*, Civil No. PWG-13-883, 2014 WL 2584468, at *11 (D. Md. June 9, 2014) ("[B]ecause the jury could find a lack of probable cause, it could also infer malice."). Contrary to Officer Defendants' assertions, there is nothing conclusory about Plaintiffs' claims of malice and a related lack of probable cause. *See, e.g.*, ECF 1 ¶¶ 46-48, 48-50 (providing detailed allegations regarding how Defendants used coercion to attain a false confession from King). Thus, Plaintiffs' state and federal malicious prosecution claims against Patton and Barlow survive dismissal.

### 4. Failure to Intervene

Plaintiffs' claim for failure to intervene survives as to Patton and Barlow, because, as outlined in the preceding sections, there are sufficient factual allegations regarding their presence at the time Plaintiffs' constitutional rights were violated. *See Burley*, 422 F. Supp. 3d at 1030 (noting that a failure to intervene claim requires the officer to know that a constitutional deprivation is taking place and to have a realistic opportunity to intervene to prevent it). Thus, it is plausibly alleged that even if one of those two officers was not personally engaged in violating Plaintiffs' rights, he would have had the opportunity to intervene to prevent the other officer's unconstitutional acts.

### 5. Unlawful Detention

The Officer Defendants once again contend that the existence of probable cause renders Plaintiffs' unlawful detention claim deficient. ECF 19 at 16-17. For the reasons addressed above when discussing malicious prosecution, however, Plaintiffs have plausibly alleged an absence of probable cause, because they allege that the evidence that Officer Defendants rely on to constitute probable cause was falsified by Patton and Barlow.

Alternatively, the Officer Defendants argue that Plaintiffs' unlawful detention claim is time-barred. ECF 19 at 17-18. Specifically, they contend that under *Manuel v. City of Joliet*, 903 F.3d 667 (7th Cir. 2018) ("*Manuel II*"), Plaintiffs' claim accrued upon their conviction in 1985, and not upon their release from prison in 2019. ECF 19 at 17-18. That position is unpersuasive.

Federal Rule of Civil Procedure 8(c) provides that a statute of limitations defense is an affirmative defense. Accordingly, the burden rests on Defendants to prove that Plaintiffs' claims are time-barred. *See, e.g.*, *Newell v. Richards*, 323 Md. 717, 725 (1991). In *Goodman v. Praxair, Inc.*, an *en banc* Fourth Circuit explained that the trial court "generally cannot reach the merits" of

a statute of limitations defense at the pleading stage. 494 F.3d 458, 464 (4th Cir. 2007) (en banc). Courts may only rule on the defense at the Rule 12(b)(6) stage "if all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" *Id.* (quoting *Richmond, Fredericksburg, & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)). Indeed, in resolving a motion to dismiss, courts generally do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999) (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). Only "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint" will a court, under Rule 12(b)(6), dismiss a complaint based on an affirmative defense. *Goodman*, 494 F.3d at 464.

The parties do not dispute that Maryland's three-year statute of limitations applies to Plaintiffs' § 1983 claims. *See* 42 U.S.C. § 1988(a) (2018); Md. Code Ann., Cts. & Jud. Proc. § 5-101 (West 2019); *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 187 (4th Cir. 1999) (noting the "well-settled" principle that § 1983 claims are governed by the forum state's personal injury statute of limitations). The parties disagree, however, as to the relevant accrual date.

Importantly, while the statute of limitations for § 1983 claims is borrowed from state law, "the question of when a cause of action accrues under 42 U.S.C. § 1983 remains one of federal law." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc); *see Tommy Davis Constr., Inc. v. Cape Fear Pub. Util. Auth.*, 807 F.3d 62, 66-67 (4th Cir. 2015) (clarifying that this principle applies to all claims rooted in § 1983, including *Monell* actions against municipalities and other local government entities). The "standard rule" is that a § 1983 action accrues when the plaintiff has "a complete and present cause of action" such that he "can

18

file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)).

In *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017) ("*Manuel I*"), the Supreme Court held that a Fourth Amendment claim for unlawful pretrial detention can continue after formal legal process has been initiated. *Id.* at 920. The Supreme Court remanded *Manuel* for the Seventh Circuit to determine when the plaintiff's claim had accrued. Most courts, including the Seventh Circuit in *Manuel* following remand, have determined that the claim accrues when a plaintiff can file suit and obtain relief—in other words, when the detention ends. *See, e.g.*, *Manuel II*, 903 F.3d at 670 (determining that the claim accrues when the "would-be plaintiff" is released from detention and "is entitled to sue"); *Humphrey v. City of Anderson*, Civ. No. 19-cv-00764-JRS-TAB, 2020 WL 3060363, at *9 (S.D. Ind. June 8, 2020) (holding, in a case involving an alleged wrongful conviction, based on fabricated evidence, for which the plaintiff served more than twenty-one years' imprisonment, "Humphrey's detention ended when he was released from custody in September 2017.").

Officer Defendants urge the Court to interpret when the "detention ends" to mean the moment of conviction (and thus when the plaintiff's *pretrial* detention ends and his post-conviction detention begins), rather than the full termination of detention when the Plaintiff is ultimately released. That rationale is unpersuasive because, where a plaintiff transitions out of pretrial detention yet remains detained pursuant to a criminal conviction, a civil jury would not be permitted to determine that the conviction was invalid as obtained by unconstitutional means. *See Heck v. Humphrey*, 512 U.S. 477, 485 (1994) ("We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the

conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254."). Thus, for Plaintiff's cause of action to accrue at the point when they are "entitled to sue" per *Manuel II*, it must accrue at their release from detention in 2019, after their convictions were vacated—not decades earlier when pretrial detention ended and no ability to obtain relief existed. This lawsuit, then, was filed within the applicable statute of limitations, and dismissal is unwarranted.

### 6. Conspiracy

A claim for civil conspiracy, pursuant to § 1983, requires that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in deprivation of a constitutional right." *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996). Similarly, a claim under Maryland state law for civil conspiracy requires "(1) a confederation of two or more persons by agreement or understanding; (2) some unlawful or tortious act done in furtherance of the conspiracy or use of lawful or tortious means to accomplish an act not in itself illegal; and (2) actual legal damages resulting to the plaintiff." *Lloyd v. Gen. Motors Corp.*, 297 Md. 108, 154 (2007) (internal quotation omitted). In other words, under either theory, the allegations in the Complaint must lead to an inference that the defendants reached an understanding to pursue a common, unlawful goal. Despite the assertions by Patton, Barlow, and the BPD that Plaintiffs' allegations are insufficient or conclusory, the complaint sufficiently alleges that the Officer Defendants reached an understanding to pursue false testimony from various witnesses to frame Plaintiffs for conspiracy to murder as evidenced by factual allegations outlining how the officers worked together to achieve that end. *See, e.g.*, ECF 1 ¶¶ 29-40 (outlining how BPD officers, and specifically Patton and Barlow, met with Bailey and her daughter and

allegedly directed them to make false identifications of Plaintiffs); *Id.* ¶ 50 (specifying that Patton, Barlow, and Trooper Ressin "fed" King facts to get him to make a false statement implicating Plaintiffs in the shooting).

Moreover, Plaintiffs' claim is not barred by the doctrine of intracorporate conspiracy, which invalidates a conspiracy formed by agents of a single organization. *See Buschi v. Kirven*, 775 F.2d 1240, 1251 (4th Cir. 1985) ("It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy."). The Complaint expressly alleges the involvement of Trooper First Class Jody Ressin, who is not an employee of BPD, and details his central role in the coercive interrogation of King, ECF 1 ¶¶ 46, 47, 50, which is one of the key components of the alleged conspiracy to frame Plaintiffs. Accordingly, Plaintiffs' civil conspiracy claims survive dismissal.

### 7.   Intentional Infliction of Emotional Distress

To plead intentional infliction of emotional distress, a plaintiff must allege: (1) that the conduct in question was intentional or reckless; (2) that the conduct was extreme and outrageous; (3) that there was a causal connection between the conduct and the emotional distress; and (4) that the emotional distress was severe. *See Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977).

The Officer Defendants correctly note that, under Maryland law, "the tort of intentional infliction of emotional distress is rarely viable." *Farasat v. Paulikas*, 32 F.Supp.2d 244, 247 (D. Md. 1997). A plaintiff must plead and prove each element with specificity. *See Foor v. Juvenile Serv. Admin.*, 78 Md. App. 151, 552 A.2d 947, 959 (1989) ("Bald and conclusory allegations will not suffice"). "It is not enough for a plaintiff merely to allege that they exist; he must set forth facts that, if true, would suffice to demonstrate that they exist." *Id.* (citations omitted); *see also The Estate of Ellen Alcalde v. Deaton Specialty Hosp. Home, Inc.*, 133 F. Supp. 2d 702, 712 (D.

Md. 2001) (alterations added) (some quotations omitted) ("A complaint that fails to allege sufficient facts in support of each element must be dismissed.... [A] deficiency in any one [element] is fatal."). Maryland courts have cautioned that the tort of intentional infliction of emotional distress should be used sparingly, "its balm reserved for those wounds that are truly severe and incapable of healing themselves." *Figueiredo–Torres v. Nickel*, 321 Md. 642, 653, 584 A.2d 69, 75 (1991) (citations omitted); *see also Solis v. Prince George's County*, 153 F. Supp. 2d 793, 804-08 (D. Md. 2001). Even demonstrating a defendant's intent to cause emotional distress is insufficient. "If a defendant intends to cause a plaintiff emotional distress and succeeds in doing so, the defendant is nonetheless not liable unless his or her conduct is also extreme and outrageous." *Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 326 Md. 663, 670-71 (1992) (emphasis in original). Liability accrues only "for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. The requirements of the rule are rigorous, and very difficult to satisfy." *Id.* at 670.

The facts in this case, though, taken in the light most favorable to Plaintiffs, plausibly meet that very rigorous standard. Patton's and Barlow's position as law enforcement officers enhances the alleged extreme and outrageous character of their conduct, which "may arise from [their] abuse of a position, or relating with another person, which gives him actual or apparent authority over him, or power to affect his interests." *Harris v. Jones*, 380 A.2d 611, 615-16 (Md. Ct. App. 1977). Even the *Restatement (2d) of Torts* recognized that, "In particular police officers . . . have been held liable for extreme abuse of their position." *Id.* § 46, cmt. (e). Here, Patton and Barlow are alleged to have used their authority as officers to falsify evidence of Plaintiffs' participation in a homicide, resulting in decades of wrongful imprisonment and the attendant emotional distress.

Thus, while Plaintiffs will have a high bar to clear as the litigation proceeds, this Court will decline to dismiss Plaintiffs' intentional infliction claim.

### 8.  Maryland Constitutional Claim

While the Officer Defendants assert, seemingly correctly, that Plaintiffs' Maryland Constitutional claim is entirely duplicative of their federal constitutional claims, the duplicative and unnecessary nature of a claim does not subject it to dismissal at this early stage in the litigation. The Officer Defendants cite no other reason in support of the motion to dismiss the claim.

### 9.  Qualified Immunity

According to the analysis above, Patton and Barlow are not entitled to qualified immunity, which is overcome where a plaintiff has pled facts showing "(1) that the officer violated a statutory or constitutional right, and (2) that right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow*, 457 U.S. at 818). Plaintiffs have pleaded facts which allege plausible violations of their due process rights to a fair trial, and even the Officer Defendants acknowledge that "suppressing exculpatory evidence in bad faith or fabricating evidence would violate clearly established rights." ECF 19 at 29.  The relevant legal protections were, in fact, clearly established as of the time of Plaintiffs' arrests. *See Owens*, 767 F.3d at 401 ("[A] police officer's obligation to disclose material exculpatory evidence was clearly established by 1983[.]"); *Washington*, 407 F.3d at 283 (noting the "constitutional right not to be deprived of liberty as a result of the fabrication of evidence by an investigating officer.... was clearly established in 1983").  Accordingly, under the motion to dismiss standard, Patton and Barlow are not entitled to qualified immunity's protections, although they may re-raise the issue at later stages of the proceedings.

### C. BPD's Motion to Dismiss

BPD's Motion contains three arguments.  ECF 21-1.  Its first argument, that it cannot be liable where the Officer Defendants are not liable, does not result in dismissal, because the claims against Patton and Barlow survive.[2]  BPD's remaining two arguments are addressed in greater detail below.

#### 1.     Prematurity of Plaintiffs' Indemnification Claim

The BPD argues that Plaintiffs' indemnification claim against it in Count XI, ECF 1, ¶¶ 173-75, must be dismissed as premature, because liability has yet to be established.  ECF 21-1 at 5-6.

The LGTCA provides that any "local government," which includes the BPD, "shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment."  Md. Code Ann., Cts. & Jud. Proc. § 5-303(b)(1); *see id.* § 5-301(d)(21) (including the BPD in the LGTCA's definition of "local government").  Importantly, the LGTCA bars the relevant entity from asserting sovereign immunity as a defense to its indemnification obligation.  *See id.* § 5-303(b)(2); *Cherkes*, 140 Md. App. at 323.

Judge Hollander's decision in *Johnson*, 2020 WL 1169739, is on all fours as to this issue. In that case, an exonerated Baltimore City prisoner, Jerome Johnson, sued the BPD and four BPD detectives for his wrongful murder conviction.  *Id.* at *1.  Johnson brought § 1983 claims against the detectives, and a *Monell* claim against the BPD.  *Id.*  Johnson also pled an indemnification

---

[2] BPD's argument appears limited to the lack of a predicate constitutional injury at the hands of the Officer Defendants, and does not evidently incorporate an argument that the officers' conduct fell outside any BPD policy or custom.  ECF 21-1 at 3-5.  The Court therefore declines to address that issue.

claim against the BPD. *Id.* The BPD argued that the indemnification claim was premature, because there was no judgment against any detective, or a finding that any detective was acting within the scope of their employment with the BPD. *Id.* at *37.

The court rejected these arguments. *Id.* at *38. Collecting a number of cases from Maryland's appellate courts, the court first concluded that there is no case law "preclud[ing] a plaintiff from pleading an indemnification claim before final judgment." *Id.* (citations omitted). Next, Judge Hollander found that, while some courts have dismissed indemnification claims against the BPD as premature, under the circumstances of Johnson's case, "permitting [him] to plead an indemnification claim against the BPD at the outset avoids the possibility of redundant litigation, thereby facilitating the efficient resolution of this case." *Id.* She continued:

> Indeed, for that reason, courts in this District have permitted the BPD to file a cross-claim for indemnification against an officer under [Federal Rule of Civil Procedure] 13(g), seeking a declaration that it has no duty to indemnify despite the officer's liability not having been established. *See Bumgardner v. Taylor*, GLR-18-1438, 2019 WL 4115414, at *11 (D. Md. Aug. 29, 2019) (finding that "permitting BPD's Cross-Claim to proceed directly behind [the plaintiff's] claims serves the purposes of Rule 13(g)"); *Harrod v. Mayor & City Council of Balt.*, GLR-18-2542, 2019 WL 5636392, at *4 (D. Md. July 24, 2019) (same). That approach makes good sense where, as here, "[d]etermining whether [the] Officer Defendants were acting within the scope of their employment will, in turn, determine whether BPD is liable for [the] Officer Defendants' actions." *Bumgardner*, 2019 WL 4115414, at *11.

*Id.*

Similarly, here, Plaintiffs have lodged a *Monell* claim directly against the BPD, as well as claims against the two remaining officers who were employed by the BPD at the time of Plaintiffs' arrest and conviction. Thus, to facilitate an efficient resolution of this case, and to avoid "the possibility of redundant litigation," the Court concludes that dismissal of Plaintiffs' indemnification claim would be improper at this time. *Id.*

### 2. Sovereign Immunity as to the Claims of *Monell* Liability

Finally, the BPD argues that it enjoys sovereign immunity as to Plaintiffs' § 1983 claims. ECF 21-1 at 6. While this Court does not find the BPD's position to have been waived as a result of its cursory argument, in several recent decisions United States District Judges in this District have rejected the BPD's contention. *See, e.g.*, *Burley v. Balt. Police Dep't*, __ F. Supp. 3d __, No. ELH-18-1743, 2019 WL 6253251, at *27-29 (D. Md. amended Nov. 22, 2019); *Lucero v. Early*, No. GLR-13-1036, 2019 WL 4673448, at *3-5 (D. Md. Sept. 25, 2019); Order, *Parks v. Balt. Police Dep't*, No. TDC-18-3092 (D. Md. Sept. 9, 2019), ECF 86. Having deemed the rationales in those decisions persuasive, this Court hereby adopts them as it has in other cases, and concludes that the BPD is not entitled to sovereign immunity from Plaintiffs' § 1983 claims, at this stage in the litigation. *See, e.g.*, *Johnson v. Balt. Police Dep't.*, ___ F. Supp. 3d ___, 2020 WL 169 4349 (D. Md. Apr. 7, 2020), *Washington v. Balt. Police Dep't.*, Civil No. SAG-19-2473, 2020 WL 2198083 (D. Md. May 6, 2020). However, the Court is aware that this issue has been appealed to the Fourth Circuit on several recent occasions—should that court at some point issue an opinion to the contrary, this Court will entertain a motion for reconsideration.

## IV.   CONCLUSION

For the reasons set forth above, the Officer Defendants' Motion to Dismiss, ECF 18, is GRANTED as to Defendants Neverdon, Garvey, and Gilbert, and DENIED as to Defendants Patton and Barlow, and the BPD's Motion to Dismiss, ECF 21, is DENIED. A separate implementing Order follows.

Dated: October 14, 2020            _____/s/_____
           Stephanie A. Gallagher
           United States District Judge