IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF MARYLAND

| | |
|---|---|
| KENNETH MCPHERSON AND ERIC SIMMONS ) ) )     Plaintiff, ) ) v. ) ) BALTIMORE POLICE DEPARTMENT, *et al.*, ) ) )     Defendants. | Case No. 20-CV-00795-SAG<br><br>Hon. STEPHANIE GALLAGHER District Judge<br><br>JURY TRIAL DEMANDED |

## PLAINTIFFS' POST-ARGUMENT MEMORANDUM

Now Comes Plaintiffs, by and through their attorneys, and files this post-argument memorandum.

### Introduction

1. During oral argument yesterday, the Court questioned whether the trial testimony of Marcus King ("Marcus") was admissible. Because this issue was neither raised by the Defendants nor briefed by any of the Parties, Plaintiffs are filing the instant brief to provide this Court with the relevant argument and attendant case law that demonstrates that Marcus's testimony is admissible for a number of reasons.

### The Defendants Have Waived Any Challenge to the Admissibility of Marcus King's Testimony

2. As noted above, the admissibility of Marcus King's testimony was not raised by the Defendants in either their opening or reply briefs, nor did they elaborate on it during the oral argument beyond stating that they (now) believe it to be inadmissible. Rather, the Defendants previously relied on Marcus's testimony in their briefing as support for *their* motion for summary judgment. Doc. 93 (Defs. Mem.) at 8-9, 18-20; Doc. 93-4 (Trial Testimony); Doc. 112

(Defs. Reply) at 10-15.[1] For that reason, any argument that Marcus's testimony is not admissible should be deemed waived. *See Yousefi v. INS*, 260 F.3d 318, 326 (4th Cir. 2001). But regardless, even if not, there are three bases on which Marcus's testimony is admissible.

### Marcus King's Testimony is Admissible under Rule 804(b)(1)

3. First, as discussed during yesterday's hearing, Marcus's testimony satisfies Federal Rule of Evidence ("Rule") 804(b)(1). Under Rule 804(b)(1), when a declarant is unavailable, former testimony by that declarant is admissible where it was given "at a trial" and is now offered against a party whose "predecessor in interest had . . . an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Rule 804(b)(1). Each of those criteria is satisfied here.

4. Marcus is deceased and therefore unavailable. He died long before discovery began in this case. Likewise, there is no dispute that he gave testimony "at a trial." He testified on May 11, 1995, at Plaintiffs' criminal trial. Doc. 105-54 (Marcus Test.).

5. That leaves only the final criteria: whether the prosecutor had "an opportunity and similar motive" to develop Marcus's testimony at trial. The Fourth Circuit has explained that "the party against whom the testimony was admitted in the prior proceeding need only have a 'similar motive,' not an 'identical motive,' to the party in the second proceeding." *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 127 (4th Cir. 1995). The party against whom the testimony is offered must point to "distinctions in [their] case not evident in the earlier litigation that would preclude similar motives of witness examination." *Id.* at 128.

6. Here, there is no legitimate dispute that the prosecutor (Sharon Holback) had a "similar motive" to explore and attempt to discredit Marcus's recantation. That includes not only

---

[1] To the extent that the Defendants are seeking to admit *some* but not all of Marcus's testimony, that fails under the rule of completeness. Fed. R. Evid. 106.

2

questioning Marcus about the circumstances surrounding his interrogation and police statement (*e.g.*, was his mother present, how long was the interrogation), but also about who told Marcus what to say and how he got the information that was memorialized on the audio-recorded statement. Doc 105-54 (Marcus Test.) at 177:8-9 (mom present during interrogation); *id*. at 183:11-184:6 (asking why he told police that he was with "Country, J.R., Whitey and Black when the murder occurred"); *id* at 186:15-190:24 (Marcus was read his rights); *id*. at 193:17-19 (asked when police told him what to say); *id*. at 195:10-12 (mom was present during interrogation); *id*. at 195:18-19 ("Q. Who was it that told you what to say? A. The policeman."); *id*. at 195:23-196:7 (asking what the police made him do); *id*. at 197:16-198:6 (asking again who told Marcus what to say); *id*. at 199:12-23 (asking what the detective did during the interrogation); *id*. at 200:23-203:15 (asking about who told him what to say on the tape and when that occurred); *id*. at 203:23-204:23 (who told him what to say to the police); *id*. at 205:7-16 ("Q. What did the white detective do to make you say things out of your mouth?"); *id*. at 206:7-12 (what happened when the police turned the tape on); *id*. at 242:23-244:3 (how long until the police turned the tape recorder on); *id.* at 249:16-23 (asking about Marcus's conversation with Patton prior to Marcus' trial testimony); *id*. at 250:17-20 (asking if Marcus is afraid to tell the truth in court). [2] All told, Marcus's examination spanned 82 pages, more than half of which (48 pages) was direct and re-direct testimony. Doc. 105-54.

7. *Fields v. City of Chicago*, No. 10 C 1168, 2014 WL 477394 (N.D. Ill. Feb. 6, 2014), is instructive in determining whether Marcus's testimony satisfies Rule 804. In *Fields*, the

---

[2] Defense counsel also asked similar questions. Doc 105-54 (Marcus Test.). at 215:9-217:24 (asking about his arrest and awaiting interrogation at the police station); *id*. at 219:16-220:3 (mother is in the interrogation room); *id*. at 221:15-222:5 (police making him say stuff after he told them he did not know anything); *id*. at 223:3-224:23 (police told him he got a bag full of guns, screaming at him, etc.); *id*. at 226:6-16 (what his mother was doing in the interrogation room).

3

court considered whether to admit testimony from the plaintiff's criminal sentencing by a witness who had since died. At the sentencing, the witness stated that one of the investigating police officers (later a defendant in the civil suit) induced him to falsely identify the plaintiff as a murderer. *Id.* at *8. The court concluded that this testimony was admissible because "[t]he prosecutors at Fields' trial were every bit as motivated to cross-examine him vigorously . . . as the defendants are here." *Id.* The court emphasized the seriousness of the criminal proceedings, which could have resulted in a death sentence, noting that the jury was asked to resolve "a question of paramount importance to both sides in the case." *Id.*

8. The same result obtains here: Ms. Holback was motivated to "cross-examine [Marcus] vigorously" to discredit Marcus's recantation and undermine any suggestion that there was anything untoward in the police interrogation—just as the Defendants are seeking to do here. Doc. 93 (Defs. Mem.) at 18-20; Doc. 112 (Defs. Reply) at 10-15. Indeed, during the oral argument on the Defendants' motion for summary judgment yesterday, defense counsel proclaimed Marcus's taped-statement "the truth" and argued that Defendant Patton's aggressive questioning of Marcus was a legitimate police tactic to get at that "truth"—the very same arguments Ms. Holback made in closing argument. Doc. 105-63 (State Closing Argument) at 168:23-24 (Marcus told the truth to the police); *id*. at 170:21-24 (Marcus had "a moment of decency in his life, and coming forward and telling the truth on tape, with his mother, for you the jury, to hear"); *id*. at 209:15-16 (waited for defense to explain why Marcus would confess and they "miserably failed"); *id*. at 210:13-211:5 (Marcus gave a "clear, concise, detailed" account of the murder after he was read his rights three times); *id*. at 211:10-11 ("applauds" Detective Patton for his work on the case, not going to apologize for his legitimate questioning of Marcus); *id*. at 211:21-212:18 (Patton's investigation was diligent and professional, including his

4

questioning of Marcus); *see also Kravitz v. U.S. Dep't of Comm.*, 382 F. Supp. 3d 393, 402 (D. Md. 2019) (finding deposition testimony taken in an unrelated case admissible where the parties cross-examining the witness in that case had a "similar motive" to question the witness); *United States v. Gibson*, 84 F. Supp. 2d 784, 786 (S.D.W. Va. 2000) (finding "that State Farm conducted Browning's examination under oath and had the same motive as the United States to challenge Browning's reliability").

9. In particular, Ms. Holback told the jury that Marcus confessed:

> Not because he was given a script. Not because he was tortured, not because he was beaten over the head with a phone book like they do in other places. But because he decided that what he had done was terribly, terribly, terribly wrong and Detective Patton got through to him for that moment in time and his version is remarkably consistent with Diane Bailey's version.

Doc. 105-63 (State Closing Argument) at 212:12-18.[3]

10. Moreover, just as in *Fields*, the stakes were sufficiently high to warrant Ms. Holback to probe Marcus's testimony: The Plaintiffs were charged with first-degree murder and faced life in prison, which they were ultimately sentenced to.

11. Finally, having failed to even raise the inadmissibility of Marcus King's testimony, the Defendants likewise fail to point to anything distinct about this civil case that would preclude a finding of similar motive. *Supermarket of Marlington, Inc.*, 71 F.3d at 127. For that reason, and those described above, Rule 804(b)(1) is satisfied.

**Marcus King's Testimony is Admissible as a Statement Against Interest**

12. Second, an additional basis for admissibility that was not addressed at the hearing is that Marcus King's testimony is admissible as a statement against interest. Under Rule

---

[3] Ms. Holback also called Defendant Patton as a witness to introduce Marcus's police statement and discredit any argument that he coerced Marcus or fabricated Marcus's statement. Doc. 105-17 (Patton Test. 5/12/95) at 5:14-32:8 (describing circumstances of the interrogation), 42:2-63:6 (statement played), 66:15-69:13 (describing conversation on the way to courthouse and at courthouse with Marcus).

5

804(b)(3), a statement against interest is admissible in a civil proceeding where (a) the declarant is unavailable; and (b) "a reasonable person in the declarant's position would have made [it] only if the person believed it to be true because, when made, it expose[d] the declarant to . . . criminal liability." Rule 804(b)(3).[4] Both of those criteria are satisfied here.

13. As noted above, Marcus is unavailable. In addition, the testimony Marcus gave recanting his audio-recorded police statement could have exposed him to "criminal liability" for making a false statement to the police if his trial testimony were credited. Maryland Crim. Code § 9-501 (making a false statement to the police); *see also* Maryland Crim. Code § 9-306 (obstruction of justice).

14. For those reasons, Marcus's testimony is admissible as a statement against interest under Rule 804(b)(3).

### Marcus King's Testimony is Admissible Under Rule 807

15. Third, and yet another basis for the admissibility of Marcus's testimony that was not explored yesterday is Rule 807. Under Rule 807, a hearsay statement is not excluded even where it does not satisfy an exception under Rules 803 or 804 if "the statement is supported by sufficient guarantees of trustworthiness," "is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts" and the

---

[4] The additional requirement that the statement also be "supported by corroborating circumstances that clearly indicate its trustworthiness" applies only if the statement "is offered in a criminal case as one that tends to expose the declarant to criminal liability." Rule 804(b)(3); *see also United States v. Kivanc*, 714 F.3d 782, 792 (4th Cir. 2013) ("Claimants recognize that Rule 804(b)(3)(B) requires corroborating circumstances only for statements 'offered in a criminal case.'") (quoting Rule 804(b)(3)(B)); Rule 804 advisory committee's notes, 2010 amends. (explaining that the rule does not address "the use of the corroborating circumstances for declarations against penal interest offered in civil cases."). Regardless, as described more fully in paragraphs 16-19 below discussing the admissibility of Marcus's testimony under Rule 807, Marcus's testimony is consistent with and corroborated by other evidence in this case. *See United States v. Tucker*, No. 91-5283, 1992 WL 44813, at *2 n.2 (4th Cir. March 11, 1992) (explaining the trustworthy requirement in the residual exception is equivalent to that described in Rule 804).

6

proponent provides notice to the opposing party of his intent to use the hearsay statement. Rule 807. Each of those criteria is satisfied here.

16. Marcus King's testimony has sufficient guarantees of trustworthiness under Rule 807. As noted above, Marcus gave testimony under oath in a court of law. He was examined by all parties extensively and questioned expressly about his police statement and recantation on direct, cross, and re-direct examination. Doc. 105-54. "Previous testimony under oath in a criminal trial is as trustworthy as residual hearsay evidence is likely to get." *United States v. Tellechia*, No. 97-1984, 1998 WL 476760, at *2 (7th Cir. Aug. 10, 1998); *see also United States v. Shaw*, 69 F.3d 1249, 1254 (4th Cir. 1995) (explaining that "vigorous questioning" on "direct and cross-examination" provides "substantial indicia of trustworthiness . . . ."); *Shaw*, 69 F.3d at 1254 ("This trustworthiness requirement—which serves as a surrogate for the declarant's in-court cross-examination—is satisfied if the court can conclude that cross-examination would be of marginal utility.") (internal quotations omitted); *see also United States v. Diaz-Martinez*, CR ELH-19-0358, 2021 WL 4918054, at *4 (D. Md. Oct. 21, 2021) (for trustworthiness, courts consider "whether the testimony was given voluntarily, under oath and subject to cross-examination").

17. Moreover, Marcus's testimony is consistent with and corroborated by other evidence in this case. *Pratt v. Harvey*, No. 1:03 CV 00388, 2004 WL 3019356, at *7 (M.D.N.C. Aug. 9, 2004), *report and recommendation adopted*, 2004 WL 2915301 (M.D.N.C. Dec. 13, 2004); *see also Kivanc*, 714 F.3d at 792 (corroboration is relevant); *Diaz-Martinez*, 2021 WL 4918054, at *4 (courts can consider "corroboration" in determining whether statement is trustworthy).[5] To start, in his testimony, Marcus asserted that he was not present for the shooting,

---

[5] There appears to be some tension among the cases regarding how to analyze a statement's trustworthiness: Some cases appear to include consideration of whether there is evidence corroborating a

but instead was on Chapel Street with Plaintiff McPherson and numerous others. Doc. 105-54 (Marcus Test.) at 175:9-176:10. That has been corroborated by alibi witnesses, and both Plaintiffs have been declared innocent by the State of Maryland. *See* Doc. 105 at 1-3, 23-24. In other words, the alleged facts in Marcus's taped statement have been proven false—just as Marcus asserted they were in his testimony at Plaintiffs' criminal trial. Doc. 105-54 (Marcus Test.) at 182:4-16, 229:1-6, 239:18-22.

18. Additionally, Marcus's testimony about the Defendants' misconduct in procuring his false police statement has been corroborated. For example, Marcus testified that Defendants told Marcus that he went and got a bag full of guns; Patton admitted that he fed this information to Marcus. Doc. 105-54 (Marcus Test.) at 223:3-11; Doc. 105-17 (Patton Test. 5/12/95) at 29:19-20, 32:1-2; Doc. 105-40 (Patton Test. 5/12/95) at 44:12-22. Similarly, Marcus testified that Defendants were screaming at him, and made him cry; Defendant Patton confessed to the same. Doc. 105-54 (Marcus Test.) at 224:2-23; Doc. 105-17 (Patton Test. 5/12/95) at 29:22-23, 30:22-24, 32:4-5, 41:23-42:1, 144:7-14.

19. Finally, Marcus himself repeatedly (and consistently) recanted his police statement. *United States v. Dunford*, 148 F.3d 385, 393 (4th Cir. 1998) ("the consistency of their stories given to those officials provide clear indicia of the trustworthiness of their statements."); *see also Blanchard*, 652 Fed. App'x at 195 (repeated statements to girlfriend over several months indicate trustworthiness). To that end, on November 3, 1994, during an evaluation at the Waxter Juvenile Detention Center, King told the psychiatrist that "two other boys were locked up with

---

hearsay statement while other cases indicate that substantive corroboration is irrelevant, and the inquiry instead focuses only on the circumstances surrounding the making of the hearsay statement. *Compare Shaw*, 69 F.3d at 1253 n.5 (only thing relevant is circumstances surrounding statement) with *U.S. v. Blanchard*, No. 15–4497, 652 Fed. Appx. 194, 195–96 (4th Cir. 2016) (identifying as a factor "the nature and strength of independent evidence relevant to the conduct in question").

8

him, Kenneth and Eric, but they did not do it." Doc. 105-60 (King Waxter Coto Eval. 11/3/95) at MAIP McPherson 54. Likewise, during another evaluation, King told two different psychologists the same thing. Doc 105-61 (King Waxter Villasana Eval. 11/3/95) at MAIP McPherson 59.

20.     Moreover, there is no real dispute that Marcus's testimony is more probative on the issue of fabrication than any other evidence that Plaintiffs can obtain through reasonable efforts. Marcus's trial testimony is the only testimony that he gave under oath (and for which he was cross-examined) about (a) his whereabouts on the night of the murder; (b) his interrogation by the police; and (c) his audio-recorded police statement. *See Harris v. City of Chicago*, 327 F.R.D. 199, 203 (N.D. Ill. 2018) (finding decedent-plaintiff's statement more probative than other evidence where it was the only evidence of the excessive force used); *see also United States v. Solomon*, No. 01-4121, 24 Fed. App'x 148, 152 (4th Cir. 2001) (admitting evidence under the residual exception where "it was not reasonable to require the government to bring in the record custodians from different parts of the country to prove th[e fact of the purchase]"). Without that testimony, Plaintiffs would be unduly and unfairly hampered in proving their case—indeed, were that testimony to be deemed inadmissible it would operate as a windfall for the Defendants, potentially insulating them from trial for their fabrication of Marcus's statement notwithstanding the fact that Marcus was fully examined about each of the topics relevant to the instant litigation by the prosecutor during his testimony.

21.     Finally, Plaintiffs are providing notice of their intent to use Marcus's testimony at trial under Rule 807. The need to provide such notice only arose at the hearing yesterday: Prior to the hearing date, the Defendants had not lodged a single objection to the admissibility of that testimony. Instead, the Defendants relied on it for their motion for summary judgment.

## Conclusion

22. For all of the reasons stated herein, Marcus's testimony satisfies Rule 804(b)(1), Rule 804(b)(3) and Rule 807, and is therefore admissible.

Respectfully submitted,<br>
**KENNETH MCPHERSON**<br>
**ERIC SIMMONS**

By: /s/ Gayle Horn
*One of Plaintiff's Attorneys*

*Attorneys for Plaintiff*
Jon Loevy*
Gayle Horn
Roshna Bala Keen*
Renee Spence*
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 243-5900
*Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I, Gayle Horn, an attorney, hereby certify that I filed the foregoing Memorandum via the Court's CM/ECF system on May 9, 2023, and thereby served a copy on all counsel of record.

/s/ Gayle Horn
*One of Plaintiffs' Attorneys*