IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KENNETH MCPHERSON AND ERIC SIMMONS | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) 20-CV-795-SAG |
| BALTIMORE POLICE DEPARTMENT, et al., | ) ) ) ) |
| Defendants. | ) |

**OFFICER DEFENDANTS' RESPONSE TO PLAINTIFFS' POST-ARGUMENT MEMORANDUM**

Defendants Robert Patton and Frank Barlow ("Officer Defendants"), by and through their undersigned counsel, and pursuant to the Court's order of May 17, 2023 (ECF 121), respectfully submit the following Response to Plaintiffs' Post-Argument Memorandum (ECF 122).

**I.   The Court may consider the admissibility of Marcus King's testimony at this stage of the litigation.**

In the course of oral argument at the motions hearing held on May 8, 2023, the Court questioned the admissibility Marcus King's testimony. Plaintiffs filed a ten-page Memorandum of Law presenting their arguments on the matter in depth. The Court is given the discretion to consider the admissibility of King's testimony pursuant to Fed. R. Civ. P. 56(f)(2).[1] *See Hanson v. First Nat. Bank*, No. 5:10-CV-00906, 2012 WL 2922736, at *3 (S.D.W. Va. July 17, 2012) ("To the extent Plaintiff argues the Court failed to give him notice required under Rule 56(f)(2), the Court has now considered his substantive arguments relative to the evidence, on this issue, as

---

[1] In filing the below response, Officer Defendants reserve the right to move *in-limine* to bar King's testimony at trial, if necessary.

though such arguments were presented in response to the motions for summary judgment []."). As Plaintiffs have now been given the opportunity to fully respond to the Court's inquiry regarding the admissibility of King's testimony, Rule 56(f)(2) permits the Court to consider whether Plaintiffs can use King's testimony to generate a material dispute of fact. Further, "it is the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Boiardi v. Freestate*, No. CIV.A. ELH-11-01676, 2013 WL 5410131, at *5 (D. Md. Sept. 25, 2013) (quoting *Bouchat v. Baltimore Ravens Football Club*, Inc., 346 F.3d 514, 526 (4th Cir. 2003)). For the reasons set forth below, King's testimony does not satisfy any exceptions to the rule against hearsay and is inadmissible.

> **II.     Marcus King's trial testimony is inadmissible as former testimony because the prosecutor, who cannot be deemed Officer Defendants' predecessor in interest, did not have a similar motivation to develop King's testimony.**

Federal Rule of Evidence 804(b)(1) permits the introduction of "[t]estimony given as a witness [at another hearing] … if the party against whom the testimony is now offered, or in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." *Horne v. Owens–Corning Fiberglas Corp.*, 4 F.3d 276, 282 (4th Cir. 1993) (citing Fed. R. Civ. P. 804(b)(1)).[2] Conversely, when "the

---

[2] Plaintiffs cite *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 127 (4th Cir. 1995) without any elucidation. The holding in *Marlinton* requires some background regarding an unrelated area of law, but does not support Plaintiffs' expansive understanding of "similar motives." In *Marlinton*, the Fourth Circuit analyzed the appropriate standard for the "fraudulent concealment tolling doctrine," and adopted the "intermediate, affirmative acts standard" (i.e. To toll the statute of limitations in an anti-trust case, "a plaintiff must prove that the defendants affirmatively acted to conceal their antitrust violations, but the plaintiff's proof may include acts of concealment involved in the antitrust violation itself."). *Id*. at 127. Against this backdrop, the Court considered the admission of the criminal trial testimony of Paul French, a former manager of a dairy producer whose employees allegedly conspired to "price-fix," to support plaintiff's "fraudulent concealment" claims against the dairy. *Id*. The Court held that though it adopted the "intermediate, affirmative acts standard,":

> the defendants' motivation in questioning French in the criminal trial—to show the conspiracy never occurred—although not identical, is substantially similar to the

2

motives differ, the testimony may not be introduced." *Id*. Marcus King's 1995 trial testimony is hearsay and does not satisfy the former testimony exception. In this case, Officer Defendants do not have a predecessor in interest who had the opportunity to develop King's testimony. Moreover, the prosecutor did not share a similar motive with Officer Defendants in this case to develop King's testimony. *See Hannah v. City of Overland, Mo.*, 795 F.2d 1385, 1390 (8th Cir. 1986), abrogated by *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 109 S. Ct. 1981, 104 L. Ed. 2d 557 (1989) (deposition of witness taken during criminal prosecution could not be used against police officer in civil case; officer was not party to criminal prosecution and prosecutor did not have similar motive to cross-examine witness).

Even if "privity is not the gravamen of the analysis," *Horne*, 4 F.3d at 283, the distinctions between the prosecutor, ASA Holback, and Officer Defendants cannot be disregarded as they further illustrate their dissimilar motivations in the examination of Marcus King. *See Brittney Gobble Photography, LLC v. Sinclair Broad. Grp., Inc.*, No. SAG-18-3403, 2020 WL 1809191, at *7 (D. Md. Apr. 9, 2020) ("Additionally, even if 'privity is not the gravamen of the … analysis,' it is worth noting that WENN was not Sinclair's predecessor in interest."). These distinctions are apparent at first glance: a prosecution against Plaintiffs for murder—a case in which Officer Defendants were not a party—juxtaposed to a civil suit for damages brought by Plaintiffs against

---

> dairies' motivation, under the intermediate standard in the civil trial—to show the conspiracy never occurred, or that if it did, it happened without any affirmative acts of concealment. Indeed, because, as the district court recognized, most price-fixing conspiracies involve affirmative acts of concealment, the dominant motive in each trial is to show the conspiracy never occurred.

*Id*. Unlike in *Marlinton*, where the Court treated conspiracy to price-fix and affirmative acts to conceal the conspiracy as sufficiently similar, there is hardly any overlap between the factual and legal questions at the criminal trial and this civil case, as explained below.

Officer Defendants. *See Hill v. City of Chicago*, No. 06 C 6772, 2011 WL 3876915, at *3 (N.D. Ill. Sept. 1, 2011).

To demonstrate that the prosecutor and Officer Defendants do not share a "similar motive" in the development of King's testimony, the Fourth Circuit requires that the Officer Defendants need only "point up distinctions in [their] case not evident in the earlier litigation that would preclude similar motives of witness examination." *Horne*, 4 F.3d at 283. Indeed, there are significant meaningful distinctions.

The allegations in this civil case require proof of elements entirely different than those required to prove murder and related offenses under Maryland criminal law. For example, in defense of Plaintiffs' claim that Officer Defendants fabricated King's recorded statement, Officer Defendants argued that, even assuming *arguendo* the falsity of King's statement, they did not know of its falsity or act with reckless disregard for the truth. This critical point would have been of little relevance to ASA Holback. Rather, at the instant of King's recantation, ASA Holback would have been motivated to admit King's recorded statement into evidence in pursuit of her overall motivation to secure a conviction. Indeed, approximately 18 pages into King's direct examination, the court indicated that the requirements for admission under *Nance-Hardy* had been met and that King's recorded statement could be admitted through Det. Patton.[3] *See* Trial Transcript May 11-18, 1995, ECF 93-4 at 193 (MS SAO Subpoena 000192).

As a result, ASA Holback's examination of Marcus King was woefully insufficient if ASA Holback shared similar motives with the Officer Defendants. The mere fact that ASA Holback incidentally touched on some areas that Officer Defendants would have exhaustively probed does not substitute as a similar motivation. In order to test the veracity of King's testimony, Officer

---

[3] *See Nance v. State*, 331 Md. 549 (Md. 1993).

Defendants would develop testimony pertinent to, *inter alia*: (1) each act of aggressive questioning attributed to Officer Defendants, including the shouting, pounding the desk, and "standing on the desk," as well as the reactions of King's mother and Trooper Jody Ressin to each alleged act; (2) the timing of King's abandonment of his initial denial; (3) whether King discussed his claims regarding police behavior with anyone after his arrest, including his mother or juvenile attorneys; and (4) the source of each and every detail contained in his recorded statement. These topics were irrelevant to the elements required to prove Plaintiffs guilty of the charges stemming from Anthony Wooden's murder. Thus, ASA Holback and Officer Defendants did not have a similar motive to develop King's testimony. *See United States v. DiNapoli*, 8 F.3d 909, 912 (2d Cir.1993) ("If a fact is critical to a cause of action at a second proceeding but the same fact was only peripherally related to a different cause of action at a first proceeding, no one would claim that the questioner had a similar motive at both proceedings to show that the fact had been established (or disproved)."); *see also Annunziata v. City of New York*, No. 06 CIV. 7637 (SAS), 2008 WL 2229903, at *9 (S.D.N.Y. May 28, 2008) (finding that prosecutor did not have the same motive to cross-examine a witness as the defendants in the civil case because the issue was "of little, if any concern to the State" and the prosecutor had other evidence to support the criminal case).

In *Hill v. City of Chicago*, the court highlighted two important reasons that a prosecutor cannot be expected to serve simultaneously as civil defense attorney for some future lawsuit. *See Hill*, 2011 WL 3876915, at *3. First, "[t]he prosecutor 'is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.'" *Id.* (quoting *Berger v. United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 633, 79 L. Ed. 1314 (1935)). "Thus, a prosecutor's motive in securing [a]

5

just result differs from a civil attorney's motive when representing a defendant in a civil rights lawsuit." *Id*. This distinction in motive is not just theoretical.

> Prosecutors in criminal trials [] usually have their hands full trying to protect the public and secure a just result in the criminal prosecution. Under [Plaintiffs'] theory here, those busy prosecutors would also need to think and act as surrogate defense counsel for future civil rights lawsuits against officers who are not their clients. (Put aside for the moment the complications presented when more than one police officer might face a future lawsuit.) At the risk of stating the obvious, even those prosecutors who might have the needed knowledge to take on these additional responsibilities would rarely have the time or inclination to do so.

*Butler v. Indianapolis Metro. Police Dep't*, No. 1:07-CV-1103-DFH-TAB, 2009 WL 2092416, at *2 (S.D. Ind. July 13, 2009).

"Second, the motive of a prosecutor to cross-examine a witness is different than the motive of a defendant in a later-filed civil rights lawsuit in relation to the potential penalties or financial stakes involved." *Hill*, 2011 WL 3876915, at *3.

> The police officer faces the prospect of personal liability, particularly for punitive damages, which may not be the subject of any indemnity agreement with the local government, as well as the prospect of harm to professional reputation that may result if a court or jury finds a violation of constitutional rights. The police officer has powerful financial and professional motives to pursue the reasons for the complaining witness's change of story and to attack the witness's credibility. [] Those differences between the prosecutor's and the police officer's [] motives weigh heavily against using Rule 804(b)(1) to allow plaintiff ... to use in his civil trial the [testimony] in the criminal prosecution.

*Butler*, 2009 WL 2092416, at *2. For these reasons, Marcus King's testimony is inadmissible in this case as former testimony.

    **III.**    **Marcus King's trial testimony is inadmissible as a statement against interest because it was self-serving and not against his interest.**

Federal Rule of Evidence 804(b)(3) provides an exception to the rule against hearsay for statements against interest. In a civil case, a "statement against interest" is defined as "[a] statement that a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary

6

interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability." Fed. R. Evid. 804(b)(3)(A). "Whether a statement is truly against the declarant's penal interest can only be determined in light of all the surrounding circumstances." *United States v. Steward*, 793 F. App'x 188, 190–91 (4th Cir. 2019) (citing *Williamson v. United States*, 512 U.S. 594, 603-04, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994)). King's trial testimony, including his recantation of his recorded statement, is decidedly self-serving.

Plaintiffs cite to current Maryland law, "Maryland Crim. Code § 9-501 (making a false statement to the police)" and "Maryland Crim. Code § 9-306 (obstruction of justice)," and erroneously claim that King's recorded statement "could have exposed him to 'criminal liability' for making a false statement to the police." ECF 122 at ¶13. This claim fails at every level. Most fundamentally, at the time of King's recorded statement, he was under arrest for the murder of Anthony Wooden. *See* ECF 93-4 at 317 (MS SAO Subpoena 000316). King's recorded statement implicated himself in the murder. *See id*. at 320-32 (MS SAO Subpoena 000319-31) (at McPherson's request, King retrieved two guns in a black bag from McPherson's girlfriend's home). The very next day, the State's Attorney filed an 18-count delinquency petition against King. *See* King Juvenile Court Records, ECF 94-2 at 7-8 (MS Juv. Court Subp. 0007-8). Following various filings and hearings, the State voluntarily dismissed all charges on January 25, 1995. *Id*. at 3-4 (8 (MS Juv. Court Subp. 0003-4). Absolutely nothing prevented the State from re-charging King for his involvement in Wooden's murder at the time of King's testimony in May of 1995. Therefore, on the simplest level, King's trial testimony—denying any wrongdoing—*furthered* his interests to avoid juvenile prosecution for murder and 17 other related counts.

In addition to protecting himself by denying his alleged role in Wooden's murder, King was strongly motivated by a desire to protect Plaintiffs from criminal liability. *See United States v. Benko*, No. 1:13CR00006, 2013 WL 2467675, at *7 (W.D. Va. June 7, 2013) ("[Declarant] may have been motivated by a desire to protect an accomplice, the defendant here, from incurring additional criminal liability, which this statement arguably does at little risk to [the declarant's] own circumstances."); *see also* Deposition Transcript of Kenneth McPherson, ECF 93-21 at 377:5-378:14 (375:5-376:14) (Plaintiff considered King as family). Thus, "the total context of [King's testimony] evidences a clear goal of minimizing the criminal activity of both [King and Plaintiffs]." *Benko*, 2013 WL 2467675, at *7. "This goal is inconsistent with the rationale for Rule 804(b)(3), which defines statements against interest to be reliable because they are unambiguously contrary to the declarant's penal or pecuniary interest." *Id*. (citing *United States v. Maliszewski*, 161 F.3d 992, 1009 (6th Cir.1998)).

Additionally, through his testimony, King did not expose himself to juvenile charges for making a false statement to law enforcement or obstruction. The statutes Plaintiffs cite were plainly inapplicable to King.[4] Maryland Crim. Code § 9-501[5] (making a false statement to the police) applies only when "committed by one whose false statement causes the police initially to undertake an investigation," and not "by one who, during an ongoing investigation, answers an investigating police officer's inquiries untruthfully." *Jones v. State*, 362 Md. 331, 336, 765 A.2d 127, 130 (2001).[6] It is undisputed that the police investigation in this case was long underway by the time

---

[4] Regardless, King's testimony was not against his interest because he claimed that he provided a false statement because he was under duress. *See, e.g.*, *United States v. Slatten*, 865 F.3d 767, 805 (D.C. Cir. 2017) ("[A]s a general matter, a self-defense claim is not 'clearly' against a declarant's interest.").

[5] In September 1994, the substantively equivalent statute was MD CODE, Art. 27, § 150.

[6] The Court of Appeals reiterated its analysis set forth in *Choi v. State*, 316 Md. 529, 560 A.2d 1108 (1989). *See Jones*, 362 Md. at 335.

King was arrested. The police initiated their investigation immediately after the shooting on August 31, 1994, and King was arrested on September 6, 1994. *See* Excerpts from BPD Homicide File, ECF 93-2 at 2-3 (Legal Images Scan Homicide File 00032-33). Similarly, Maryland Crim. Code § 9-306[7] (obstruction of justice) applies "only to actions aimed at obstructing or impeding a judicial proceeding," and not to "actions [that] may have obstructed a police investigation." *State v. Pagano*, 341 Md. 129, 139, 669 A.2d 1339, 1343–44 (1996).[8] At the time of King's recorded statement on September 6, 1994, no one had even been arraigned in connection with Wooden's murder, and certainly no judicial proceedings were pending. *See* Grand Jury Transcript, ECF 93-10 at 2 (MS 008383); ECF 94-2 at 7-8 (MS Juv. Court Subp. 0007-8).

Finally, even when a statement is properly deemed to be truly against the declarant's interest, the Supreme Court has made clear that "only those portions of the narrative [of a statement against interest] that are inculpatory are admissible." *Steward*, 793 F. App'x at 191. "The most faithful reading of Rule 804(b)(3) is that it does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory." *Williamson*, 512 U.S. at 600. "Self-exculpatory statements are exactly the ones which people are most likely to make even when they are false; and mere proximity to other, self-inculpatory, statements does not increase the plausibility of the self-exculpatory statements." *Id*. As such, even if some portion of King's testimony could be misconstrued as against his own interest, none of his non-self-inculpatory statements would be admissible under Rule 804(b)(3). The most prominent and relevant examples of King's non-self-inculpatory testimony include his recantation regarding Plaintiffs' involvement in Wooden's murder and his description of police behavior on September

---

[7] In September 1994, the substantively equivalent statute was MD CODE, Art. 27, § 27.
[8] The Court of Appeals affirmed the Court of Special Appeals affirmation of the Circuit Court's opinion dated June 10, 1994. *See Pagano*, 341 Md. at 132.

6, 1994. Furthermore, any testimony that could somehow be viewed as allegations of police misconduct are not only non-self-inculpatory, but outright self-exculpatory and completely inadmissible.

### IV. Marcus King's trial testimony is inadmissible under the residual exception because it is not supported by sufficient guarantees of trustworthiness.

"[Fed. R. Evid.] 807 is 'a narrow exception' to the rule against hearsay that 'should be utilized only after much consideration and examination.'" *United States v. Cunningham*, 761 F. App'x 203, 206 (4th Cir. 2019) (citing *United States v. Dunford*, 148 F.3d 385, 392, 394 (4th Cir. 1998)). As described below, King's testimony does not fit within this narrow exception. Under Rule 807, a statement that is otherwise hearsay may be admitted when "(1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and (2) It is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807. King's testimony fails both prongs.

"[T]he first element—that the statements have [] guarantees of trustworthiness—[is] the 'most important.'" *Id*. (citing *Dunford*, 148 F.3d at 393). As King's testimony was directly impeached at trial, the claim that his testimony is trustworthy, let alone guaranteed to be trustworthy, is unreasonable.[9] *See, e.g.*, ECF 93-4 at 186:10-12 (MS SAO Subpoena 000185:10-12) (claiming that he was not told he had the right to remain silent before his statement was taken); *cf. id*. at 187:24 – 188:23 (MS SAO Subpoena 186:24 – 187:23) (admitting that the police read him his right to remain silent from a form and that he initialed that statement on the form); *id*. at 188:24 – 189:1 (MS SAO Subpoena 187:24 – 188:1) (claiming he didn't know to whom the initials

---

[9] As illustrated in the examples below, the Court need not accept the fact that King offered sworn testimony in a court of law as itself indicia of its truthfulness. The mere fact that King was impeached negates this premise.

"PDS" on the rights form belonged); *cf. id*. at 189:2-15 (MS SAO Subpoena 188:2-15) (admitting the that he recognized the initials as his mothers and that she initialed each right after it was read to him); *id*. at 227:18-22 (MS SAO Subpoena 226:18-22) (claiming the prosecutor told him to testify consistently with what he said on his recorded statement and that he told the prosecutor the recorded statement was not true); *cf. id*. at 249:3-17 (MS SAO Subpoena 248:3-17) (admitting that he never told the prosecutor that his recorded statement was untrue).

The entire premise of King's testimony—that he previously provided a false statement to police in the presence of his mother and while under arrest for murder—raises serious questions about King's credibility. King's statements were so inconsistent that the presiding judge made the following remarks during a sidebar:

> One thing I'm utterly convinced of [King's] told you one thing, he's told her other things. He apparently, and I believe her -- within an hour or so of his appearance on the stand, was willing to be consistent with the statement and now he's flip-flopped again. You know he's flip-flopped several times. He apparently gave a statement. He says he first said one thing and then -- true, and then he gave a taped statement, then he subsequently retracted it, and she gave him -- then apparently, as Mr. Brown seems to have known because he mentioned it to the jury in his opening statement, he apparently flipped back again with her. Now he's on the stand and he's flipped again with you, and that's the way he is, apparently, and that's a 13 year old kid, or 14 –

*Id*. at 232:6-19 (MS SAO Subpoena 231:6-19).[10]

---

[10] Moreover, as mentioned above in the context of "statement against interest" and equally relevant here to demonstrate a lack of "sufficient guarantees of trustworthiness," King still faced serious liability if he testified consistently with his recorded statement. His denial of involvement in a murder can hardly be viewed without healthy suspicion. His insistence that Plaintiffs were not involved is similarly suspect, especially in light of the fact that the Plaintiffs and King viewed each other like family. *See* ECF 93-21 at 377:5-378:14 (375:5-376:14). It is worth mentioning that King was arrested multiple times within a year and a half of his testimony, including for crimes of dishonesty. *See* Dep't of Juvenile Serv. Mem. 9/26/94, attached as Exhibit 1, at MAIP McPherson 000072.

Plaintiffs point to two statements attributed to King as indicia of the reliability of his trial testimony. *See* ECF 122 at ¶19. As a threshold matter, these statements are hearsay and cannot possibly sufficiently corroborate other hearsay to guarantee its trustworthiness. *See* King Waxter Coto Eval. 11/3/94, ECF 106-13; King Waxter Villasana Eval. 11/3/94, ECF 106:14. In fact, closer scrutiny of the King attributed statements to Dr. Villasana and Dr. Braxton-Brown reveal King struggled with candor even with them.

> [Marcus] first reported riding bikes with his "close cousin" (really just a friend), seeing an ambulance and fire truck, and going with his "cousin" to see what was happening… Marcus was questioned about having heard gun shots and denied this twice. When confronted with the fact that he had previously reported hearing gun shots, he again denied it. It was explained to him that he was not considered a reliable source as he was contradictory in the information given. He then admitted he had heard shots, did not know where they came from, continued to ride with his "cousin" approximately "5 or 10 minutes," saw the ambulance and fire truck and went to investigate. As the police would not allow the body to be viewed, he and his "cousin" reportedly left. When asked why he had denied hearing the shots, Marcus stated he did not want to be involved as he had not been around when the boy was killed.

*See* ECF 106-14 at MAIP McPherson 000059. Notably, both of these "corroborating" statements contain significant inconsistencies with each other and with King's trial testimony. *See* ECF 106-13 at MAIP McPherson 000054 (King makes no mention of being with anyone at the time of the shooting, denies hearing gun shots, and claims he learned of incident upon "coming around the corner" and viewing the crime scene.); *cf.* ECF 106-14 at MAIP McPherson 000059 (King claims he was riding bikes with one cousin, admits to hearing gunshots, and claims he continued to ride around with his cousin for 5-10 minutes before viewing the crime scene.); *cf.* ECF 93-4 at 176-77 (MS SAO Subpoena 000175-76) (King claims he was with his cousin and Plaintiff McPherson (for the first time), that he was standing on Chapel St. with them when they heard gun shots (no mention of bikes), that upon hearing the shots they ran into a girl named Joanne's house (for the first time)). Moreover, Plaintiffs conveniently omit a third statement attributed to King in which

he implicated Plaintiff McPherson in the murder. *See* Dep't of Juvenile Serv. Mem. 9/26/94, attached as Exhibit 1, at MAIP McPherson 000072 ("Although he claims no involvement in this matter, he did willfully implicate the two (Daniel Ellison and **Kenneth McPherson**) that he says actually did the killing." (emphasis added)). Substantial other evidence exists that cast serious doubts on the veracity of King's testimony including the grand jury and trial testimony of Diane Bailey and Plaintiff McPherson's confession. *See* ECF 93-10 (MS 008383-91); ECF 93-4 at 602-718 (MS SAO Subpoena 000601-717); ECF 94-1 at 5 (MS 003087).

Finally, and perhaps most importantly, Plaintiffs' fabrication claim is predicated on asking the Court to allow a jury to selectively credit certain portions of King's testimony and supplement those excerpts with speculative inferences, while discrediting his plain testimony that the police did not tell him what to say. *See* ECF 93-4 at 200:24 – 201:2 (MS SAO Subpoena 000199:24 – 200:2) ("Holback: What exactly did the white detective tell you that you had to say? King: Tell me – say the truth."); *id*. at 202:13-15 (MS SAO Subpoena 000201:13-15) (Holback: Where did the information come from that you gave the detectives on the tape? King: From the -- it came from -- what Whitey told me --."); *id*. at 202:23 – 203:2 (MS SAO Subpoena 000201:23 – 202:2) ("The Court: Where did you get the story you told on the tape? King: Somebody was – well, Whitey – well, Whitey told – when I was – when I was …"); *id*. at 204:5-9 (MS SAO Subpoena 000203:5-9) ("The Court: Well, did you just make [ ] up [the lies that you told on the tape] yourself or did somebody else tell you or what? King: No, I'm -- I'm saying -- well, Whitey told me -- it was some of the stuff what -- what I was saying on the tape."); *id*. at 205:17-18 (MS SAO Subpoena 000204:17-18) ("Holback: Did [the police officer who you said made you say something different

13

on the tape] tell you what he wanted you to say? King: No.").[11] Plaintiffs cannot have it both ways. If King's testimony is trustworthy, Plaintiffs' fabrication claims must fail. If portions of King's testimony are not accurate, King's testimony is not "supported by sufficient guarantees of trustworthiness" and is inadmissible hearsay.

## CONCLUSION

For these reasons, Officer Defendants respectfully request that this Honorable Court grant their motion for summary judgment and dismiss Plaintiffs' claims against them in their entirety.

DATED: May 24, 2023

Respectfully submitted,

/s/
Shneur Nathan, Bar No. 20707
Avi T. Kamionski, Bar No. 20703
Judson Arnold, Bar No. 21296
Alexander S. Rothstein, Bar No. 23228
Nathan & Kamionski LLP
575 S. Charles St., Suite 402
Baltimore, MD 21201
Phone: (410) 885-4349
Fax: (952) 658-3011
snathan@nklawllp.com
akamionski@nklawllp.com
jarnold@nklawllp.com
arothstein@nklawllp.com

*Counsel for Officer Defendants*

---

[11] In their opposition brief Plaintiffs torturedly concede that "King's testimony at points may be subject to competing interpretations." ECF 105 at 36.

## CERTIFICATE OF SERVICE

    I hereby certify that on May 24, 2023, I caused the foregoing document to be electronically filed with the Court's CM/ECF system, which will send an electronic copy of the same to all counsel of record.

                                                                  _/s/ Judson Arnold_